CHRISTINE E. CARLOCK, as Administratrix of the Estate of WILLIAM F. CARLOCK, Deceased, Appellant, v. WESTCHESTER LIGHTING COMPANY, Respondent.

(Argued May 24, 1935; decided July 11, 1935.)

*L. Daniel Danziger, Raymond E. Barnett* and *Thomas J. O' Neill* for appellant.  The trial court erred in ruling as matter of law that it was immaterial whether or not the ordinance was, as matter of fact, violated; that no causal connection between such violation, if any, and the accident could be found, as matter of fact; and in prohibiting a finding, as matter of fact, that the violation of the ordinance was not some evidence of the first link in the chain of concurrent proximate causes resulting in the death of plaintiff's intestate.  (*Martin* v. *Herzog,* 228 N. Y. 164;

*Meyers* v. *Barrett,* 167 App. Div. 170; *McGrath* v. *Home Ins. Co.,* 88 App. Div. 153; *Ring* v. *City of Cohoes,* 77 N. Y. 83; *Ivory* v. *Town of Deerpark,* 116 N. Y. 476; *O' Neill* v. *City of Port Jervis,* 253 N. Y. 423; *DeHaen* v. *Rockwood Sprinkler Co.,* 258 N. Y. 350; *Rosenberg* v. *Schwartz,* 260 N. Y. 162; *Kalinowski* v. *Truck Equipment Co.,* 237 App. Div. 472; *Donnelly* v. *Piercy Contracting Co.,* 222 N. Y. 210; *Braun* v. *Buffalo General Electric Co.,* 200 N. Y. 484; *Casualty Co.* v. *Swett Electric Light & Power Co.,* 230 N. Y. 199.)

*Herbert C. Smyth* for respondent. The ordinance is inapplicable. Its claimed violation was not the proximate cause of the accident. (*Carlock* v. *Westchester Lighting Co.,* 242 App. Div. 778.)

FINCH, J. William F. Carlock, a member of the New York city fire department, responded with his company to an alarm of fire at a building under construction at Two Hundred and Thirteenth street and White Plains avenue. There was no sign of fire at the building when the firemen arrived. Carlock, carrying a fire hose, scaled the ladder to a scaffolding on the unfinished side of the building and, as he stepped upon the platform, his foot came in contact with live wires which electrocuted him.

Some years before, the defendant Westchester Lighting Company had erected poles to support its high tension wires on this corner. At that time the lot on which the building was being constructed was vacant and the wires were suspended only thirty feet above the ground. They were so hung that when building construction was commenced they crossed over the private property inside of the building line. After the brick men had been working on the building three or four weeks, the wall approached within three or four feet of the high tension wires and one of the building employees raised the wires to about eight feet above the scaffolding, by means of a wooden strut, so that the bricklayers could proceed without coming in contact with them A rain storm

occurring during the evening soaked the wooden strut, the wires short circuited and fell to the scaffold. It was on these wires that Carlock stepped. The wires were originally insulated with a covering known as " waterproofing insulation." There is testimony that the wires were frayed. Plaintiff duly offered in evidence section 301, subdivision b, of article 3 of chapter 9 of the New York City Code of Ordinances, reading as follows:

" § 301.   Line wires.

\*          \*          \*          \*          \*          \*          \*

" b. Line wires shall be at least eight feet from the nearest point of buildings over which they pass, and if attached to roofs the roof structures shall be substantially constructed. Wherever feasible, wires crossing over building shall be supported on structures which are independent of the buildings." (New York Code of Ordinances, ch. 9, art. 3, § 301, subd. b.)

This ordinance was first admitted in evidence. Later it was stricken out and thereafter reinstated. Finally, the jury was directed to disregard the ordinance, because " the evidence does not disclose any causal connection between the claimed violation of the ordinance,  \*   \*   \* and the happening of the accident. I say that you may not find negligence on the part of the defendant by reason of any violation of the ' eight foot over the roof ' ordinance. That did not cause or contribute to the happening of this accident." Thus the court took this issue away from the jury and ruled upon it as a matter of law.

Three specific questions were submitted to the jury, the first being: " Was the defendant guilty of negligence in the maintenance of its high tension wires, which was the or a proximate cause of the injury and death to Mr. Carlock? " The jury answered this question in the negative and was then directed to return a verdict in favor of the defendant. The judgment entered thereon has been affirmed by the Appellate Division.

The exclusion of the ordinance from the consideration of the jury constituted error. It is a well-settled rule in this State that where an ordinance for the protection or benefit of individuals prohibits the doing of acts or imposes a specific duty, the neglect to obey the prohibition or to perform the duty is some evidence of negligence to be considered by a jury in an action brought by one for whose protection the statute was enacted to recover for any injuries of the character which it was designed to prevent, proximately produced by such disobedience or neglect. (*Newhall* v. *McCann*, 267 N. Y. 394; *Racine* v. *Morris*, 201 N. Y. 240; *Massoth* v. *Delaware & Hudson Canal Co.*, 64 N. Y. 524.) (See *Knupfle* v. *Knickerbocker Ice Co.*, 84 N. Y. 488; *Schumer* v. *Caplin*, 241 N. Y. 346, 351.) The ordinance involved herein was promulgated by competent authority as a necessary protective measure against the death-dealing potentialities of high tension wires. The failure of the defendant to comply with the ordinance might well have been found by the jury to have been a proximate cause of Carlock's death. The raising of the wires by the workman and the rain storm causing the wires to fall and to short circuit intervened between the death and the violation of the ordinance. None the less the violation would seem to have been a proximate cause of the death, or so the jury might have found. Several acts may occur to produce a result, one or more being the proximate cause. (*Ring* v. *City of Cohoes*, 77 N. Y. 83; *Ivory* v. *Town of Deerpark*, 116 N. Y. 476.) When varying inferences are present, a jury question is raised. (*O'Neill* v. *City of Port Jervis*, 253 N. Y. 423.)

The live wires, contrary to the ordinance, had not been kept at least eight feet from the nearest point of the building. If they had been so placed there would have been no need for the workman to have raised the wires in order that the bricklayers might work in safety. If the wires had not been raised on the wooden strut, the rain storm might not have caused them to fall and short circuit.

Though the rain storm may have been the "immediate cause" of the death, it would be well within the province of a jury to find that the violation of the ordinance was a proximate cause. The failure to comply with the ordinance made necessary the act of the workman; his act created a situation whereby the natural phenomenon of rain could cause a short circuit. These intervening acts were not of such nature as to break the chain of causation. Where harmful consequences are brought about by intervening and independent forces, the operation of which might have been reasonably foreseen, there is no break in the chain of causation of such character as to relieve the actor from liability. This is so even though they are deliberate and independent, but innocent, acts of a human being. As Judge ANDREWS, speaking for the court, said in *Donnelly* v. *Piercy Contracting Co.* (222 N. Y. 210, at p. 213): "In the case before us the question is whether the act of the defendant gave rise to the stream of events which culminated in the accident."

The defendant urges that the ordinance is not applicable; that being in derogation of the common law, it should be construed as applying only to buildings already constructed. Obviously this is too narrow a construction, in view of the protective nature of the legislation and its applicability to a municipality in which new buildings are constantly being erected.

In *Braun* v. *Buffalo General Electric Co.* (200 N. Y. 484) an electric light company, under written permission, had strung two electric wires diagonally across a vacant lot suitable for the erection of a dwelling. While engaged in working upon the second story of a house which was being erected on the lot, a carpenter came in contact with the wires and received an electric shock from which he died. In reversing a dismissal of the complaint by the trial court, this court found that it was a question for the jury whether the company, in the exercise of reasonable care and foresight, should not have apprehended that the

lot over which the wires were strung might be so used as to bring people in contact with them. So here, it might be found that the defendant in the exercise of reasonable care and foresight as a prudent lighting company, supplying electricity to all the buildings in this neighborhood, should have anticipated that a building might be erected upon this corner lot which was suitable for a building of any description or height. In the same way is answered the contention of the defendant that the plaintiff did not prove direct notice to the lighting company that this building was in the course of erection. Of course, the defendant knew that these high tension wires were within the building line and were only about thirty feet above the ground, so that they would be well within the reach of any building to be erected upon the property. Sufficient time elapsed between the commencement of building operations and the time that the wall came within the eight-foot limit to make the question of constructive notice one for the jury. Where an owner of realty permits a condition out of which an accident may arise to exist on his premises for as many days as it took weeks for this building to reach within eight feet of these wires, the issue of constructive notice is submitted to the jury; nor does it matter that the condition may have been caused by the intentional act of a tenant, which was not within the realm of the reasonably foreseeable. As against the evidence sustaining the submission to the jury of the issue of constructive notice, the lighting company did not offer any evidence of lack of knowledge that a building was being erected. The errors of the court were serious and vital, and unquestionably affected the result of the trial.

It follows that the judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to the appellant to abide the event.

CRANE, Ch. J. (dissenting). I take a different view regarding this case than that expressed by my associate Judge FINCH.

The Westchester Lighting Company maintained its electric light poles and wires on the southeast corner of Two Hundred and Thirteenth street and White Plains avenue, Bronx, New York city. Wires, extending from pole to pole, were thirty-four to thirty-five feet off the ground. There was no building on the adjoining lot. It was a vacant lot. The wires were properly constructed and, as placed, not dangerous or illegal. The company in maintaining them had complied with every law.

The Code of Ordinances of the City of New York, chapter 9, article 3, section 301, subdivision b, reads as follows:

" § 301. Line wires.

\*          \*          \*          \*          \*          \*          \*

" b. Line wires shall be at least eight feet from the nearest point of buildings over which they pass, and if attached to roofs the roof structures shall be substantially constructed. Wherever feasible, wires crossing over building shall be supported on structures which are independent of the buildings."

This ordinance did not apply to these wires when they were constructed. It is said, however, that there came a time when the ordinance did apply, and that the company violated it. When did this occur? These are the facts.

Someone — we are not told who — commenced the erection of a building on this vacant lot. Two or three days before the fatal accident in this case the brick structure had reached the vicinity of the wires. The brick mason testified as follows: " Q. Previous to the 29th day of August, 1927, when Mr. Carlock met with his unfortunate death, had you noticed any wires of the defendant — electric wires? A. Well, about two or three days before that I seen the wires coming across the corner of the building, \* \* \* about a foot of the roof."

No one notified the company to remove its wires or that a building was being erected on the lot. The most natural thing to expect of a contractor as he approached in his work electric wires would be to ask the owner to remove or replace them. Nothing of this kind was done. Somebody — we do not know who — took a stick and shoved the wires up to the height of about eight feet, and left the stick resting on the scaffolding or building. This was done in the morning, and in the afternoon when a heavy storm came up the wood, resting against the wire, together with the moisture, caused the wire to burn out or melt and drop upon the scaffold. At the same time firemen came to the building and one of them, going upon the scaffold, struck the wire and was killed. Wherein lies the negligence of the company?

As before stated, it constructed its wire according to law, and had a right to maintain it until such time as it knew, or had reason to know, that it might be dangerous to others. Only two or three days before the accident had the building, in process of construction, come near to the wire or within eight feet of it. The company was not notified of this fact or given an opportunity to remove or replace its wire. Apparently some workman undertook to do this for himself and, on the very day of the accident, pushed it up with a stick, causing the break.

The company is now blamed for the recklessness of third parties in failing to notify it, and, for the culpable negligence of a third party shoving the wire out of the way by a stick which caused the trouble and, ultimately, the death of the fireman. It is said that the company was negligent in not discovering that the building had approached the wire within eight feet. This would require a constant lookout over all vacant property or building operations, which is too strict a rule to apply. A telephone call or a notice of any kind would in all probability have caused the company to have removed or replaced the wire at once. Besides, the fireman was

not killed because he struck a wire within eight feet of a scaffold or the roof of the building. His sad accident resulted from the negligence of a third party attempting to do that which the company never had a chance to do, *i. e.*, replace the wires.

Failing to see any want of care upon the part of the Westchester Lighting Company, I am for the affirmance of the judgment for the defendant.

O'Brien, Hubbs, Crouch and Loughran, JJ., concur with Finch, J.; Crane, Ch. J., dissents in opinion in which Lehman, J., concurs.

Judgments reversed, etc.