WALTER F. JENKINS and Others, Respondents, *v.* 313–321 W. 37TH STREET CORP., Appellant, Impleaded with NATIONAL TRANSPORTATION CORP. and Others, Respondents, and UNITY GARAGE CORP., Defendant.

First Department, June 9, 1939.

*H. H. Brown* of counsel [*E. C. Sherwood*, attorney], for the appellant.

*Milton P. Kupfer* of counsel [*Edward M. Edenbaum*, attorney], for the plaintiffs, respondents.

*Edward M. Fuller* of counsel [*Fred H. Rees* with him on the brief; *Daniel Mungall*, attorney], for the respondents, National Transportation Corp., 310 West 38th Street Corp., Yellow Taxi Corporation, New York, and Parmoco, Inc.

CALLAHAN, J.   On the morning of March 22, 1932, fire broke out in the subcellar of a loft building owned and operated by the appellant at 313–321 West Thirty-seventh street.   This building will be referred to hereafter as " No. 313."

Plaintiffs were all members of the uniformed fire department of the city of New York, who responded to a fire alarm on the date mentioned.   The firemen entered No. 313 and proceeded to the subcellar where the boiler room was located.   The dimensions of the boiler room were about twenty-five feet by fifty feet.   In it there was a sump pit about three and one-half to four feet square, and about five or six feet deep.   The bottom of the sump pit was below the level of the adjoining sewers.   A pump was maintained in the sump pit to pump into the sewers liquids collecting in the pit. The intake of the pump was near the bottom of the pit.

When the firemen arrived at No. 313, the sprinkler system was in action, and a considerable amount of water was on the floor of the subcellar.   A small blue flame was seen moving around that room. The commanding officer ordered the sprinkler cut off.   When that was done an odor of gasoline was detected.   An order was given to one of the firemen to open the window in the back of the subcellar. Immediately a sizzling flash enveloped the whole room.   This flame or explosion caused the injuries to plaintiffs for which they have recovered damages.   The fire was apparently caused by the ignition of gasoline vapor.   No gasoline was used or stored in No. 313.

After the fire had been extinguished, a thorough investigation was made of the surrounding buildings and premises.   Excavations were made which disclosed that there was a subterranean stream running under the street near the premises.

Immediately west of No. 313 was a building known as Nos. 323–325 West Thirty-seventh street. (This building will be referred to as " No. 325.") West of No. 325 was an " L " shaped building known as 327 West Thirty-seventh street, which building ran through to Thirty-eighth street. (This building will be referred to as " No. 327.") The portion of No. 327 facing Thirty-seventh street ran alongside of No. 325 and its " L " on Thirty-eighth street immediately adjoined No. 313 in the rear thereof. No. 327 was owned by the respondent 310 West 38th Street Corp., and the remaining respondents were lessees, sublessees or others operating same. It was used for garaging taxicabs. The Thirty-eighth street portion of No. 327 was separated from the rear of No. 313 by a very narrow areaway. Ten gasoline tanks, having a capacity of 550 gallons each, were sunk in the ground under the Thirty-seventh street end of No. 327. Another large tank was in the Thirty-eighth street end of the building.

After the fire, the excavators found large quantities of gasoline floating on the surface of seepage water which collected in holes dug in front of Nos. 325 and 327. No gasoline appeared to be stored in No. 325, and the owners or occupants of that building are not involved in this appeal. After the fire, smaller quantities of gasoline were found floating on the surface of the water in the sump pit in No. 313. The sump pit was five feet lower than the cellar level of No. 327.

The theory of plaintiffs' complaint was that the defendant-appellant was negligent for failure to remedy an extra hazardous condition of which it had notice, to wit: A condition caused by the presence of gasoline in large quantities in the sump pit.

The trial court advised the jury that before appellant could be held liable, it must appear that it had notice that gasoline had collected in its premises in such quantities that it should have anticipated that the presence thereof would create an additional hazard to firemen. The case, therefore, is plainly one where notice to appellant of a dangerous condition was an essential part of plaintiffs' proof.

One Jonasch was the superintendent of appellant's building (No. 313). He had charge of the boiler room of that building. Jonasch was called as a witness for the plaintiffs. He denied that he had ever noticed any odor of gasoline or had ever seen any gasoline in the sump pit prior to the date of the fire. A paper was then shown to Jonasch, which he admitted that he had signed. In this paper Jonasch stated that " for a time previous to the fire and explosion there was a strong odor of gasoline in the engine room, and the floor of the sump pit was damp from the same." Jonasch

stated that he had signed the paper at the request of some persons who said they represented a firemen's benevolent association, and desired to aid the firemen to get some benefits, but Jonasch denied the truth of its contents.

Jonasch was also asked concerning an alleged oral admission to an assistant fire marshal (one Cassidy) to the effect that for a considerable period of time prior to the fire he had noticed an odor of gasoline about the sump pit. He denied making any such statement. Cassidy was called by plaintiffs and permitted to testify that such statement had been made by Jonasch.

The plaintiffs contend that there is proof in the case of actual notice to Jonasch, and proof of constructive notice, based on the circumstances which evidenced the existence of a dangerous condition for some time prior to the accident.

The paper which Jonasch signed and the alleged inconsistent oral statements made to the assistant fire marshal (Cassidy) were received in evidence solely for the purpose of impeaching Jonasch's present testimony. The paper was properly received pursuant to the provisions of section 343-a of the Civil Practice Act, but the receipt of Cassidy's testimony as to Jonasch's alleged prior inconsistent oral statements was clearly error. Both Jonasch and Cassidy were plaintiffs' witnesses. Section 343-a of the Civil Practice Act does not permit the receipt of impeaching evidence consisting of prior unsworn oral statements by a party's own witness. The section refers only to written statements, and statements made under oath.

The trial court charged the jury that nothing said by Jonasch in his alleged prior inconsistent statements bound the appellant, and that such prior alleged inconsistent statements did not prove notice to the appellant of the condition in No. 313. The charge thus established the law of the case to be that the alleged contradictory statements made by Jonasch could not be used substantively for the purpose of proving notice, but were to be used solely on the question of Jonasch's credibility.

The trial court's ruling, limiting the alleged prior statements to such effect as they might have on Jonasch's credibility, would seem to be correct — at least in the absence of some admission on the part of Jonasch as to the truth of his prior inconsistent statements. (See *Matter of Roge* v. *Valentine*, 280 N. Y. 268.) Although, in answer to one or two questions put to him on cross-examination, Jonasch gave some testimony which might be interpreted as an admission that the declarations made in his written statement were true when made, an examination of the whole of his testimony shows that he repudiated such written statement as entirely untrue. In any event, the charge of the trial court constituted the law of the case

and precluded the substantive use of Jonasch's written statement. Under the circumstances there was no affirmative evidence of actual notice to Jonasch. At most there was a prior statement or statements, received solely for the purpose of attacking Jonasch's credibility, which were inconsistent with his present testimony. No other proof of actual notice is contended for.

Nor do we find sufficient evidence in the record from which constructive notice to the appellant of the presence of gasoline in the sump pit of No. 313, prior to the date of the fire, could be inferred by the jury. While the examination of the subsurface conditions of the surrounding premises, made after the fire, may have justified a finding by the jury that gasoline was percolating through the soil under the adjoining buildings, and that some of this gasoline found its way into appellant's sump pit, these facts did not establish that gasoline had found its way into the sump pit of No. 313 on any day before the date of the fire. The fact that seepage was a slow process would not aid plaintiffs in this regard. It would show that the presence of gasoline would not become noticeable in No. 313 until some time after it had left its source, but it would in nowise demonstrate when gasoline first became noticeable in No. 313.

A record was kept of the quantity of gasoline which entered the sump pit in No. 313 each day after the fire. That the amounts were comparatively small compared to what was found in the surrounding soil does not aid in establishing what was the essential factor necessary in plaintiffs' proof, to wit: That a dangerous condition existed in No. 313 for a sufficient length of time prior to March 22, 1932, to constitute notice to the owner or its agents. The record of the quantities of gasoline appearing in the sump pit after the fire showed considerable variance in quantity from day to day. On some days there was as little as three-fourths of an inch floating on the water therein. The holes dug in the soil near the surrounding buildings showed that such soil was impregnated with it. But these were conditions after the fire, and there was no proof that conditions were the same before the fire. Nor was there any proof from which an inference might properly be drawn by the jury as to the quantity of gasoline in the appellant's building on the day of the fire, except that there was enough to cause an explosion. Careful scrutiny of the record discloses no proof sufficient, in our opinion, to justify a finding by the jury of constructive notice.

Because of lack of proof of notice, we must reverse the judgment.

The question remains as to whether we should order a new trial or dismiss the complaint. If plaintiffs had established the elements of appellant's negligence, other than that of notice, we would deem it proper to order a new trial, for Jonasch's testimony did not

entirely exclude the possibility that he intended to admit the truth of the written statement made by him. If such admission should develop upon a new trial, the weight to be given to this written statement would be for the jury. *Prima facie* proof of actual notice might be thus established.

We must determine, therefore, whether negligence was established by the proof concerning appellant's conduct. Appellant takes the position that plaintiffs were mere licensees and that appellant did not owe them the same duty of maintaining its premises in a reasonably safe condition that it would owe to an invitee.

The question as to whether a fireman entering a building in the course of duty is a mere licensee or entitled to the same protection as an invitee, has been frequently discussed by our courts. It was considered, in the recent case of *Maloney* v. *Hearst Hotels Corp.* (274 N. Y. 106). That case involved an appeal from a judgment in favor of the representative of a deceased fireman, who was killed by an explosion occurring in the cellar of defendant's hotel while the fireman was there fighting a fire. In that case the explosion was caused by the storage of a large quantity of paints and other highly volatile substances in the cellar, in violation of a city ordinance. The Court of Appeals said (at p. 110): " The defendant had failed to observe these ordinances and from this failure arises the liability which has been enforced in this case. We are not called upon at this time to decide whether in the absence of such ordinances or rules and regulations an owner of property owes the same duty to a fireman as he would to an invitee to keep his premises in reasonably safe and secure condition. *Meiers* v. *Koch Brewery* (229 N. Y. 10) does not necessarily go this far. We may reserve the question, however, for further consideration as we have in this case a direct violation of ordinances which were enacted for the benefit of firemen as well as guests in the hotels; at least firemen entering into the premises had a right to assume that the law in this particular had been complied with. (*Racine* v. *Morris*, 201 N. Y. 240; *Carlock* v. *Westchester Lighting Co.*, 268 N. Y. 345.) " In the present case there is no claim of violation of any ordinance or regulation.

In the *Maloney* case the Court of Appeals referred to section 761 of the Greater New York Charter. That statute (prior to amdt. by Laws of 1935, chap. 800) reads as follows: " All hoistways, well-holes, trap-doors, and iron shutters shall be closed at the completion of the business of each day by the occupant of the building having use or control of the same, and in case of a violation of this provision, such occupant having the use or control thereof shall forfeit and pay a penalty of fifty dollars for each and every neglect or omission so to do. And for any accident or injury to life or limb, resulting directly

or indirectly from any neglect or omission to properly comply with any of the requirements of this section, the person or persons culpable or negligent in respect thereto shall be liable to pay any officer, agent, or employee of said fire department injured, or whose life may be lost while in the discharge or performance of any duty imposed by said commissioner, or to the wife and children, or to the parents, or to the brothers and sisters, being the surviving heirs-at-law of any deceased person thus having lost his life, a sum of money, in case of injury to person, not less than one thousand dollars, and in case of death not less than five thousand dollars, such liability to be determined and such sums recovered in an action to be instituted by any person injured, or the family or relatives of any person killed as aforesaid; and any or all persons for any fire, resulting from his or their wilful or culpable negligence or criminal intent or design, shall, in addition to the present provision of law for the punishment of persons convicted of arson, be liable in a civil action for the payment of any and all damages to the person or property, the result of such fire, and also for the payment of all costs and expenses of said fire department incurred in and about the use of employees, apparatus, and materials in the extinguishment of any fire resulting from such cause, the amount of such costs and expenses to be fixed by said commissioner, and when collected shall be paid into the relief fund of said department herein created; and shall also be liable for injury to person or loss of life of any officer, agent, or employee of said fire department in the same manner and like extent, and to be sued for in like manner as in the preceding part of this section provided for."

The Court of Appeals, in the *Maloney* case (*supra*) said that the effect of section 761 was not before it, because it had not been relied on or raised in the courts below. The court, therefore, did not pass on the question as to whether this statute limits recovery by a fireman to cases of willful and culpable negligence. The question of the effect of section 761 has been properly raised on this appeal.

Prior to the decision of our Court of Appeals in *Meiers* v. *Koch Brewery* (*supra*), cited in the *Maloney* case, the rule had sometimes been stated by our courts to be that firemen and policemen who entered private property in the performance of their duties were mere licensees by operation of law. (See *Racine* v. *Morris*, 136 App. Div. 467; affd., 201 N. Y. 240; *Eckes* v. *Stetler*, 98 App. Div. 76; *Baker* v. *Otis Elevator Company*, 78 id. 513.)

In *Baker* v. *Otis Elevator Company* (*supra*) the court said, concerning the measure of care owed firemen: " While it is true that every manufacturing plant and other combustible building is liable to

fires, it cannot be the rule of law in this State that every manufacturer is bound to leave his factory at night in such a condition that no one entering it for the purpose of putting out a fire in the darkness will be liable to encounter dangers. Factories stand for years without fires, and it would be a harsh rule to hold that a manufacturer owed the duty to a fireman to anticipate and guard against any possible accident by a fall through a hole in the floor or by reason of the machinery not being lighted and guarded."

However, in the case of *Meiers* v. *Koch Brewery* (*supra*), which was decided after the *Baker* case (*supra*), the Court of Appeals held the owner of a building liable to a fireman who entered on the property in the performance of his duty and fell into an uncovered and unguarded coal hole in a driveway running into the premises from the street, which it was necessary for the fireman to use to reach the burning building. The court in that case, in passing on the status of a fireman while using the driveway, said that he was more than a bare licensee and that the duty owed to him with respect to its condition was one of reasonable care under all the circumstances. The court held, concerning the circumstances in that case, that the probability that the driveway might be used at night by one rightfully entering the premises was not so remote that it could say, as a matter of law, that no negligence arose from leaving an unguarded coal hole.

In that case the Court of Appeals said (p. 17): " We, therefore, approve the conclusion reached by the Appellate Division, but we limit our decision to the precise facts before us. To the case of one not a licensee entering business property as of right over a way prepared as a means of access for those entitled to enter who is injured by the negligence of the owner in failing to keep that way in a reasonably safe condition for those using it as it was intended to be used."

Therefore, under the present state of the authorities, we do not find that there is any rule established that a fireman entering a business building is entitled in all respects to the same protection as one expressly invited or that he does not assume the risks of some additional conflagration caused by the nature of the use of the premises, or by those conditions existing therein not denoting unreasonable disregard of the safety of such an occasional visitor. We deem it to have been settled by the *Meiers* case, merely, that a fireman being compelled to enter private property was entitled to be protected against those dangers such as unguarded openings in passageways, and that he might recover for lack of reasonable care in permitting such a dangerous condition to exist. Such ruling did not necessarily mean that it would be lack of reasonable care

if the owner of property failed to exercise constant vigilance against adding any additional risk of conflagration or explosion in case of fire.

The present case does not involve a situation such as arose in the *Meiers* case, where the opening in a passageway constituted a hidden danger in the nature of a trap to those entering the premises; nor does it involve a situation where large quantities of volatile substances were stored or used on the premises in violation of an ordinance, as in the *Maloney* case (*supra*). At most it was a case (if we assume that the conditions which were shown to exist after the fire had existed for sufficient time before the fire to constitute notice) where gasoline in varying quantities, as low as two or three gallons a day, were seeping into appellant's cellar in connection with a larger quantity of subsurface waters which were gathering therein. No ordinance was being violated by the presence of this gasoline. Appellant had furnished a sump pit to catch such liquids as entered, and installed a pump in the pit to remove the contents into the sewer. The presence of the gasoline was not created by appellant. Therefore, assuming reasonable care as the test, the question is what duty did appellant owe in attempting to eliminate the gasoline in order to protect those who might be required to enter its subcellar in the event of fire. Was it required to take precaution to drain out all traces of gasoline with meticulous care, in order to prevent any greater combustion or danger of explosion in the event of fire? Would it be liable even to a business visitor if a fire ensued in its building and the presence of some gasoline in the sump pit caused an explosion? Should a jury be permitted to find lack of reasonable care because some gasoline floating on the top of the water in its sump pit was not removed? Consideration of the possible situations that might arise if such a strict rule was enforced might help us in answering these problems. We might be required, under such a rule, to hold negligent, in the event of fire, one who kept gasoline in his garage, or kerosene in an oil stove, for it is common knowledge that larger quantities of such substances are commonly so stored by householders than present here. In the daily use of their premises many persons do things which, to some considerable extent, increase the danger of combustion. For instance, a floor scraper who leaves a quantity of shavings on a floor, or a mattress maker who leaves a quantity of lint in his factory, creates an additional hazard. Surely we would not permit a jury to say that such persons are liable to firemen who might be called into their premises, because of lack of precaution in removing such particularly combustible materials. The work of firemen entails great danger. No one would be permitted to add to that danger

to the extent of laying a trap into which such men might fall in fighting a fire. Such was the situation in the *Meiers* case. The storage or use of gasoline, or (in this case) permitting it to gather in small quantities in connection with seepage water, while it increased the danger of combustion and possible explosion, did not constitute a breach of the duty owed. Gasoline is quite commonly used today.

As was said by SEARS, J., in *Flaherty* v. *Metro Stations, Inc.* (202 App. Div. 583, 588; unanimously affd., 235 N. Y. 605): " Further, I would not be inclined to class gasoline at the present time as a dangerous explosive (like dynamite or powder). Though somewhat volatile and highly inflammable, it has come into such common use as to be classed rather as one of the everyday necessities of modern life, concerning the keeping of which no such high responsibility should be imposed."

Appellant was not using gasoline in any quantity. Because some gasoline entered its building we do not think that it was required to be so wary of its presence as to immediately remove every trace of it?

The city ordinances (N. Y. Code of Ord. chap. 10, arts. 8, 15 ) afford some measure of protection by limiting the quantity of gasoline which may be stored. There would be no violation of those ordinances by reason of the quantity of gasoline involved in this case, even if it was being stored.

The question remains as to whether section 761 of the Greater New York Charter as it existed in 1932, limited the recovery of plaintiffs to a case of willful or culpable negligence. But we need not pass on this question. We think that even if ordinary negligence is actionable here, there was insufficient proof thereof to justify plaintiffs' recovery.

The only thing appellant could have done here, if it was aware of the fact that gasoline was gathering in its sump pit, was to notify the proper city departments of the existence thereof. It did not have the facilities to dig in the surrounding soil that the public officers had. But the evidence discloses that there were frequent visitations to appellant's building by officials from the city departments, including the representatives of the fire department, and no order was ever made directing that any action be taken to remove any hazard therein, until after the fire. Defendant maintained a modern building with a sprinkler system. In its cellar it had a sump pit with a pump. It is a matter of common knowledge that gasoline floats on the top of water, and undoubtedly in this case

the pump failed to remove the last inch or two of liquid which contained some gasoline. We think that the failure to eliminate such small portions of the contents of the pit as might remain after pumping, cannot be made the basis of actionable negligence. Such a condition was a risk assumed by a fireman.

Under all the circumstances, we deem that it would be improper to permit a jury to find negligence on the part of the present appellant, even if notice of such conditions existed before the fire. The judgment should, therefore, be reversed and the complaint dismissed.

In view of our holding that appellant is not guilty of negligence, there could be no liability over on the part of defendants-respondents, and the cross-complaint was properly dismissed. The judgment in that respect should be affirmed, with costs to defendants-respondents against the defendant-appellant; otherwise, the judgment should be reversed, with costs, and the plaintiffs' complaint dismissed on the merits, with costs.

MARTIN, P. J., and UNTERMYER, J., concur; DORE, J., dissents in memorandum in which COHN, J., concurs.

DORE, J. (dissenting). On the facts disclosed the issues of notice and negligence were not issues of law but of fact which were properly submitted to the jury and have been resolved by the jury in plaintiff's favor. The judgment should be affirmed.

COHN, J., concurs.

Judgment, as amended, dismissing the cross-complaint of the defendant 313–321 W. 37th Street Corp. against the defendants National Transportation Corp., 310 West 38th Street Corp., Yellow Taxi Corporation, New York, and Parmoco, Inc., affirmed, with costs to the defendants-respondents against the defendant-appellant, 313–321 W. 37th Street Corp. Judgment in favor of the plaintiffs and against the defendant 313–321 W. 37th Street Corp. reversed, with costs to said defendant and plaintiffs' complaint dismissed on the merits, with costs.