JOSEPH LOPEZ, an Infant, by GENEVIEVE LOPEZ, His Guardian ad Litem, et al., Appellants, *v.* CITY OF NEW YORK, Respondent.

Second Department, May 27, 1957.

*Bernard Meyerson, Sidney S. Loberfeld* and *Nathan S. Blum* for appellants.

*Peter Campbell Brown, Corporation Counsel* (*Seymour B. Quel, John A. Murray* and *Jacob J. Rosenbloom* of counsel), for respondent.

HALLINAN, J. In this action by an infant to recover damages for personal injuries, and by his mother for medical expenses and loss of services, the basic question presented is whether the respondent's motion to set aside the verdict in favor of appellants was properly granted.

The infant was injured as a consequence of being struck by a swing in a public playground, maintained by respondent through its department of parks, and located about a block away from a public school in the borough of Brooklyn. The infant was in the swing area of the playground during the noon-hour lunch recess of the school, where he was a pupil and was due to return at 12:50 P.M.

The appellants' proof sought to establish that no supervisor was present in the playground area before or at the time the mishap occurred. The infant, a boy of almost 10 years of age, had been using one of the swings which he yielded to a little girl, and begun retreating from this swing, while facing the swing and backing up towards a fence. The girl stood up on the swing and started "to pump the swing" in the direction of the infant appellant, who retreated as far as practicable until interrupted by three or four children who were congregated behind him and in front of the fence. The infant said he reached a point four to six inches from the fence when his face

was struck by the swing on its second upward arc of forward motion. The appellants' proof was to the effect that the infant was injured at 12:30 p.m. at which time an assistant gardener, who was the only playground supervisor assigned by respondent to the playground, was eating her lunch inside a field or shelter house about 30 feet distant from the swing area. The lunch period regularly designated for the supervisor was scheduled from 1:00 p.m. to 2:00 p.m. It was conceded by respondent's counsel that it was customary for the children attending the nearby school to congregate in the playground before returning to school. It appeared further that it was the supervisor's duty to see that children did not stand on swings or push them around so that other children could be injured. The regulations of the department of parks did not permit children to stand up on swings at any time. It was also shown that between noon and 1:00 p.m. a maximum of 60 children, and a minimum of 20, used the swing area, where six swings were available for use, and that a total of from 100 to 125 children were in the whole playground during that interval.

Respondent's proof was that at 12:30 p.m. there were only some 12 or 15 children in the swing area, and that the supervisor kept intermittent watch over the swing area and the rest of the playground until about three minutes prior to 1:00 p.m., when she went into the shelter house to get washed and prepare to leave the premises for her lunch. While washing, she watched the swing area through an open window. At that time there were only four or five children in the swing area, with two swings vacant. About two minutes prior to 1:00 p.m. the infant appellant and other boys came up to the door of the field house and advised the supervisor of the injury sustained. The supervisor asked the boys to wait until she put on her blouse, which she had removed before washing. She denied that she was eating her lunch when the boys came along, and she stated that she had been in the shelter house for only about one minute. Respondent also offered proof that the radius or arc cut by the moving swing in question at no time could reach a distance of less than five feet, nine inches, from the fence at a level equivalent to the infant appellant's height on the day of the accident. There is no dispute, however, and both the trial court and jury so found, that the infant was struck by the swing and that he was inaccurate in approximating his distance from the fence at a point not reached by the moving swing.

We agree with the conclusion of the learned Trial Justice, confirming the finding implicit in the jury's verdict, that there was no person in charge, actively engaged in supervision,

either of the whole playground or of the swing area, at the time of the accident, which the jury was free, under the conflicting versions offered, to fix as happening at 12:30 P.M. We do not agree, however, with his further conclusion that, as a matter of law, such omission was no evidence of negligence since respondent was required only to furnish general but not immediate supervision of each and every part of the playground. Nor do we agree that such negligence, under the circumstances of this case, bore no causal relationship to the infant appellant's injury.

In our view, implicit in the jury's verdict is the finding that respondent's supervisor had abandoned her post at the very time when large numbers of children came to the playground and made active use of the swing area. In our opinion, respondent, under the circumstances of this case, was not exculpated from liability by reason of a temporary absence from, or a momentary inattention to, the situs of the accident by its employee who was on the premises performing the duty of general supervision as in the cases cited and others of like effect (*Ohman* v. *Board of Educ. of City of N. Y.,* 300 N. Y. 306; *Curcio* v. *City of New York,* 275 N. Y. 20; *Peterson* v. *City of New York,* 267 N. Y. 204; *Laub* v. *City of New York,* 271 App. Div. 797; *Wilbur* v. *City of Binghamton,* 271 App. Div. 402, affd. 296 N. Y. 950). In the case at bar the verdict in appellants' favor was tantamount to a finding by the jury that respondent had abandoned its duty of general supervision and had in effect terminated any measures designed to care for and protect the youngsters at play during the school recess.

In the latter connection, the jury properly was left to consider and decide whether respondent had not only deprived the infant appellant and the other children of competent care and attention by designating an unqualified, as well as an undependable, person for their supervision and by assigning an assistant gardener, rather than a recreational leader, to control the area and enforce the departmental regulation against standing on swings. The duty " to protect children of tender years and experience, at least from its own negligence " rested upon the respondent (*Van Dyke* v. *City of Utica,* 203 App. Div. 26, 29), particularly when charged with knowledge, to be derived from its own departmental regulation as in the case at bar, that some sport conducted on its playgrounds might cause injury (*Lane* v. *City of Buffalo,* 232 App. Div. 334).

Under the peculiar circumstances in the case at bar, we hold that it could fairly be said that the question of whether respondent's negligence was causally related to the infant appellant's

injury was properly for the jury. Proximate cause presents a question of fact for the jury " if varying inferences are possible " and is " always dependent upon the facts of a particular case, and it is for this reason that the words are beyond definition or conclusive explanation " (*O'Neill* v. *City of Port Jervis,* 253 N. Y. 423, 433). In our opinion, reasonable men might fairly differ over the foreseeable consequences of a playground supervisor's abandoning her post and leaving the objects of her duty wholly unsupervised. It has been said that children in such a public place might conceivably act so as to cause unintentional injury to themselves or their fellows, even if their supervisor were properly and temporarily absent on official duty (*Ohman* v. *Board of Educ. of City of N. Y.,* 300 N. Y. 306, 314, *supra,* dissenting opinion, CONWAY, J., now Ch. J.). Such consequences seem more imminent to us when the supervisor has abandoned her post, or, in any event, a jury was free to so find, as it did in this case. The misdeed of respondent's employee was not obliterated by the concurrent negligence of another (cf. *Poccia* v. *City of New York,* 279 App. Div. 761, affd. 304 N. Y. 664). Several acts may operate to produce a result, each constituting part of the proximate cause (*Carlock* v. *Westchester Light. Co.,* 268 N. Y. 345, 349).

Accordingly, the judgment should be reversed, with costs, and the verdict of the jury in favor of appellants should be reinstated as rendered so that the appellants may enter the appropriate judgment thereon.

The appeal from the order should be dismissed, without costs. No such order is printed in the record.

BELDOCK, J. (dissenting). Respondent was required to provide only general, and not immediate, supervision over the swing area. It furnished such general supervision. The supervisor could not be in all parts of the playground at once. The temporary absence of the supervisor from the swing area is not proof that respondent failed in its duty of general supervision any more than if she had been in another part of the playground at the time. The temporary absence of respondent's supervisor was not the proximate producing cause of the accident. The accident happened immediately after the little girl started swinging — on the second upward swing. Under these circumstances, no inference can be drawn that any more immediate supervision would have prevented the accident, or that by any act or omission of respondent, the infant appellant was placed in a position of danger which caused his injuries, or that any greater care by respondent would have averted the accident.

NOLAN, P. J., and KLEINFELD, J., concur with HALLINAN, J.; BELDOCK, J., dissents and votes to affirm, with memorandum, in which WENZEL, J., concurs.

Judgment reversed, with costs, and the verdict of the jury in favor of appellants reinstated as rendered so that the appellants may enter the appropriate judgment thereon.

Appeal from order dismissed, without costs. No such order is printed in the record.