OPINION OF THE COURT
Cynthia S. Kern, J.
*444 Plaintiff commenced the instant action to recover damages for personal injuries he allegedly sustained when he was assaulted at the Cherry Hill Playground located at or near the corner of 99th Street and Third Avenue in Manhattan. Defendant the City of New York (the City) now moves to dismiss plaintiffs complaint pursuant to CPLR 3211 or, in the alternative, seeks summary judgment dismissing plaintiffs complaint on the grounds that the City was exercising its police powers in maintaining the park and cannot be liable absent a special relationship with plaintiff, which it alleges does not exist here. Plaintiff cross-moves to amend his complaint to clarify his claims against the City. For the reasons set forth below, plaintiffs cross motion is granted and defendant’s motion is also granted.
The relevant facts are as follows. On or about August 25, 2008, the infant plaintiff was physically assaulted by other children at the Cherry Hill Playground who were wearing boxing gloves and had been fighting with each other at the playground. Plaintiff alleges that the City is liable for plaintiff’s alleged injuries because it failed to properly manage, maintain and supervise the playground.
As an initial matter, plaintiff is entitled to amend his complaint to clarify his allegations against the City and, in particular, to assert that the City breached its proprietary duty to maintain and supervise the playground. Pursuant to CPLR 3025, leave to amend a pleading should be freely given unless the pleading is devoid of merit or will result in undue prejudice or surprise to the other party. (See McCaskey, Davies & Assoc. v New York City Health & Hosps. Corp., 59 NY2d 755 [1983].) Because plaintiff’s amended complaint is not devoid of merit and will not result in prejudice to the City, plaintiffs motion to amend his complaint is granted.
Whether the City is entitled to summary judgment depends on whether its actions in supervising or failing to supervise the playground can fairly be classified as a “governmental” function or a “proprietary” function. (See Balsam v Delma Eng’g Corp., 90 NY2d 966 [1997].) If the City was acting in its governmental capacity, it is immune from tort liability unless there is a special relationship, but if it was acting in its proprietary capacity, it is subject to ordinary tort liability. (See id.) There is no clear demarcation between these two types of functions; rather, they are on a “continuum” or “spectrum.” (Id.; see also Doe v City of New York, 67 AD3d 854 [2d Dept 2009].) A *445 quintessential “governmental” function is one “undertaken for the protection and safety of the public pursuant to the general police powers” (Doe, 67 AD3d 854, 856 [2009]) such as fire and police protection. (See id.) The courts have explained that “a municipality’s provision of police protection to its citizenry has long been regarded as a resource-allocating function that is better left to the discretion of the policy makers.” (Cuffy v City of New York, 69 NY2d 255, 260 [1987].) In contrast, quintessential proprietary functions are those in which “governmental activities essentially substitute for, or supplement ‘traditionally private enterprises’ ” and include the maintenance and repair functions typically performed by landlords. (Doe, 67 AD3d 854, 856 [2009].) “To determine where in the continuum of activity between proprietary and governmental responsibilities the challenged public action falls, we must examine ‘the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred.’ ” (Balsam, 90 NY2d 966, 967-968 [1997] [citation omitted].) In Bonner v City of New York, the Court of Appeals held that the City was acting in its governmental and not proprietary capacity when it failed to fix a broken gate at a schoolyard where a teacher was assaulted by a third party. (See Bonner v City of New York, 73 NY2d 930 [1989].) In fact, the Court held that
“[i]t is settled . . . that the provision of security against physical attacks by third parties in circumstances as are presented here, is a governmental function involving policymaking regarding the nature of the risks presented, and that no liability arises from the performance of such a function absent a special duty of protection.” (Id. at 932 [emphasis added; citations omitted]; see also Marilyn S. v City of New York, 73 NY2d 910 [1989]; Glick v City of New York, 42 NY2d 831 [1977].)
Similarly, in K.H. v City of New York, the court held that a municipality was exercising a governmental and not a proprietary function when it failed to lock a bathroom at a public park in which plaintiff was assaulted. (See K.H. v City of New York, 10 Misc 3d 1066[A], 2005 NY Slip Op 52177[U] [Sup Ct, Kings County 2005].) The Court of Appeals has explained that, in cases such as these, to hold otherwise “would be to subject municipalities to open-ended liability” and might, “in addition to posing a crushing financial burden, . . . discourage municipalities from undertaking activities to promote the general welfare ... by making the prime concern the avoidance of tort *446 liability rather than the promotion of the public welfare.” (O’Connor v City of New York, 58 NY2d 184, 191 [1983] [citation omitted]; see also Weiner v Metropolitan Transp. Auth., 55 NY2d 175, 182 [1982].)
In the instant case, the City was acting in its governmental capacity and not its proprietary capacity in managing, supervising and deciding whether and when to provide security at the playground. Here, the duty at issue was the “provision of security against physical attacks by third parties” (Bonner, 73 NY2d 930, 932 [1989]; see also K.H., 10 Misc 3d 1066[A], 2005 NY Slip Op 52177[U] [2005]). The determination whether to provide any type of park supervisors or police protection is exactly the discretionary type of resource-allocating function that is a governmental function and for which the municipality should thereby be protected from liability absent a special relationship with the plaintiff. (See Cuffy, 69 NY2d 255 [1987].) Absent such a rule, a municipality’s exposure to liability would be unreasonably vast. ,(See O’Connor, 58 NY2d at 191; Weiner v Metropolitan Transp. Auth., 55 NY2d at 182.)
The cases cited by plaintiff to the contrary, in which a municipality was held liable for injury at a public park based on a finding that it was exercising its proprietary and not governmental function, are all more than 50 years old and have been effectively, if not explicitly, overruled by Bonner and its progeny. (See Caldwell v Village of Is. Park, 304 NY 268, 273-274 [1952]; Augustine v Town of Brant, 249 NY 198, 201-206 [1928]; Lopez v City of New York, 4 AD2d 48 [1957].) Moreover, they are distinguishable on other grounds. In Augustine, plaintiff drowned at a public beach. His death was not the result of the physical assault of a third party. (Augustine, 249 NY 198 [1928].) In Caldwell, plaintiff was injured when other park goers set off fireworks on July 4th. The court there held that the municipality should be liable when “it is or should be apparent or it otherwise comes to the attention of a municipality that its park is being used by visitors as a site for criminal and patently dangerous activities.” (Caldwell, 304 NY at 275.) In that case, the park had been used for illegal fireworks displays for “a considerable period of time preceding the accident” and therefore “there was reason for the village to believe that the illegal activities would continue and perhaps be increased on the day of plaintiff’s injuries.” (Id. at 275.) In contrast, in the instant case, there is no evidence that the playground that was the site of the incident had repeatedly been the site of the type *447 of assault plaintiff had suffered. Finally, in Lopez, the City was found negligent when plaintiff was hit in the head by a child on a swing. (See Lopez, 4 AD2d 48 [1957].) In that case, a playground supervisor was assigned to the playground but had abandoned her post when the accident took place. (See Lopez, 4 AD2d 48 [1957].) Therefore, in Lopez, the City had decided to supervise the playground in a particular way and then was negligent in doing so rather than, as in the instant case, determining not to assign any such park supervisor at all.
Once it is determined that the municipality was exercising a governmental function, it can only be found liable if there is a “special relationship” between the municipality and the claimant. The elements of this “special relationship” are:
“(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking.” (Cuffy v City of New York, 69 NY2d 255, 260 [1987] [citations omitted].)
In the instant case, plaintiff fails to establish any element of the special relationship. Plaintiff cannot show the assumption by the City of an affirmative duty to protect him from such an assault, any knowledge by the municipality’s agents of the possibility of such an assault or any direct contact between plaintiff and any municipal agents. Without any of the first three elements present, it is also impossible to prove the fourth element, justifiable reliance on any affirmative undertaking made by the municipality.
Accordingly, plaintiff’s motion to amend his complaint is granted but defendant’s motion for summary judgment dismissing plaintiff’s complaint is also granted.