HERBERT T. OHMAN et al., Appellants, *v.* BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Respondents.

Argued October 19, 1949; decided December 29, 1949.

*Ralph Stout* and *Saul Goldstein* for appellants. I. Upon the evidence the question of defendants' negligence was one of fact which was properly submitted to the jury. (*Hoose* v. *Drumm,* 281 N. Y. 54; *De Wald* v. *Seidenberg,* 297 N. Y. 335; *Thomas* v. *City of New York,* 285 N. Y. 496; *Miller* v. *Board of Educ.,* 291 N. Y. 25; *Govel* v. *Board of Educ. of City of Albany,* 267 App. Div. 621, 293 N. Y. 928; *Applebaum* v. *Board of Educ. of City of N. Y.,* 297 N. Y. 762; *Williams* v. *Board of Trustees, Town of Eaton,* 204 App. Div. 566, 210 App. Div. 161; *Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339; *Reeder* v. *Board of Educ. of City of N. Y.,* 265 App. Div. 158, 290 N. Y. 829; *Lee* v. *Board of Educ. of City of N. Y.,* 263 App. Div. 23.) II. The Appellate Division erred in holding, as a matter of law, that the teacher's absence from the classroom was not the proximate cause of the accident to plaintiff. (*Meiers* v. *Koch Brewery,* 229 N. Y. 10; *McGlone* v. *Angus, Inc.,* 248 N. Y. 197; *Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339; *Payne* v. *City of New York,* 277 N. Y. 393; *Kingsland* v. *Erie Co. Agric. Soc.,* 298 N. Y. 409; *O'Neill* v. *City of Port Jervis,* 253 N. Y. 423; *Connell* v. *Berland,* 223 App. Div. 234, 248 N. Y. 641; *Williams* v. *Board of Trustees, Town of Eaton,* 204 App. Div. 566; *Collentine* v. *City of New York,* 279 N. Y. 119; *Parnell* v. *Holland Furnace Co.,* 234 App. Div. 567, 260 N. Y. 604; *Blume* v. *City of Newburgh,* 265 App. Div. 965, 291 N. Y. 739; *Peterson* v. *City of New York,* 267 N. Y. 204.)

*John P. McGrath, Corporation Counsel (Joseph J. Lucchi* and *Seymour B. Quel* of counsel), for respondents. Plaintiff failed to establish any negligence by the board of education, the principal, or the school teacher in exercising control and supervision over the thirteen-year-old plaintiff. No danger was reasonably foreseeable — in the absence of the prior occurrence of any act indicating need for extraordinary vigilance — from the act of the teacher, namely, leaving a suitable monitor in charge of the class for a short period of time while she supervised the storing of surplus drawing materials in a storeroom about fifty feet from the classroom and within calling

distance therefrom. (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339; *Di Biase* v. *Ewart & Lake, Inc.*, 228 App. Div. 407, 255 N. Y. 620; *Lane* v. *City of Buffalo*, 232 App. Div. 334; *Wildman* v. *City of New York*, 254 App. Div. 591; *Wilber* v. *City of Binghamton*, 271 App. Div. 402, 296 N. Y. 950; *Curcio* v. *City of New York*, 275 N. Y. 20; *Peterson* v. *City of New York*, 267 N. Y. 204; *Thompson* v. *Board of Educ. of City of N. Y.*, 280 N. Y. 92; *Clark* v. *City of Buffalo*, 288 N. Y. 62; *Ginsberg* v. *Board of Educ. of City of N. Y.*, N. Y. L. J., Oct. 14, 1946, p. 870, col. 3, 272 App. Div. 774.)

DYE, J. In this tort action for damages for personal injuries suffered by the plaintiff, then a pupil in a public school, we are asked to say that the jury could properly find that it was due to the negligence of the teacher in absenting herself from the classroom. The board of education in New York City is now liable for the negligence of a school teacher (Education Law, § 881-a, as it existed in 1938, now § 2510; *Reeder* v. *Board of Educ. of City of N. Y.*, 265 App. Div. 158, affd. 290 N. Y. 829).

On November 15, 1938, at about 2:15 P.M., the plaintiff, Herbert Ohman, then aged thirteen years and a pupil in drawing class 7-B, Public School No. 238, Brooklyn, under the jurisdiction of the board of education, sustained a severe permanent injury when struck in the left eye by a lead pencil. The pencil had been thrown by a classmate in the direction of a third classmate with the remark " Here is your pencil ". The boy for whom it was intended ducked and the pencil hit the plaintiff who was standing directly behind him.

The accident occurred while the teacher in charge was temporarily absent from the classroom for the purpose of sorting and storing in a corridor closet an issue of schoolroom supplies, a routine task forming part of her usual duties. The testimony as to the length of time the teacher was out of the room is conflicting (which is not at all surprising as nine years elapsed between the date of the accident and the trial) but whether for " more than an hour " as contended by the plaintiff or " less than a minute " as shown by the defendant's witnesses is wholly immaterial. The most favorable inference in any event is that the teacher was not in the room when the accident occurred. Nonetheless, it does not follow that such

absence was the proximate producing cause of the injury, which was due, as we see it, to the tossed pencil. Whether it was done mischievously and heedlessly or wantonly and willfully, or with the serious purpose of returning the pencil to its owner, it was the act of an intervening third party which under the circumstances could hardly have been anticipated in the reasonable exercise of the teacher's legal duty toward the plaintiff. As we read the statute applicable to New York City, liability of the board for the acts of a teacher is not dependent upon any new or different rules of common-law negligence. Here even if we assume without conceding that the teacher was negligent in leaving the room for any purpose, for any length of time, it does not follow that the board is liable for the consequences of an unforeseen act of a third party. This would constitute the board an insurer, and we would no longer have need to consider the applicability of long-established and well-recognized rules of common-law negligence. ' By such standards, a teacher may be charged only with reasonable care such as a parent of ordinary prudence would exercise under comparable circumstances. Proper supervision depends largely on the circumstances attending the event but so far as the cases indicate, there has been no departure from the usual rules of negligence. For instance, when defective or dangerous equipment or paraphernalia is used, the teacher or board is charged with foreseeability and negligence may be predicated thereon (*Applebaum* v. *Board of Educ. of City of N. Y.*, 272 App. Div. 875, affd. 297 N. Y. 762; *Miller* v. *Board of Educ.*, 291 N. Y. 25).

The case of *Hoose* v. *Drumm* (281 N. Y. 54) relied upon by the appellant is distinguishable and does not compel reversal. That case arose outside the city of New York prior to the enactment of the indemnity provision of the Education Law (§ 569-a, as it existed in 1938, now § 3023). The plaintiff, a public school student, was injured by a goldenrod stalk thrown by another child during a recess period. The action was against the school district trustees rather than the teacher charged with the responsibility of supervising the class while in the playground. At that time the trustees were under only the statutory duty of promulgating rules for safety and discipline (Education Law, § 275, subd. 9). Because of this we held — and it

must be considered the limit of the case as an authority — that the trustees were not liable. By dictum in the closing sentence of that opinion (p. 58) it was suggested that "any dereliction * * * was the fault of the teachers, for which the trustees cannot be held". The teacher's negligence was not before us and we did not determine it. It is also · of some significance that there the accident occurred in the playground and not in the classroom, a place where close supervision of the children is all but mandatory. Also the record contained proof of prior injuries from tossing the goldenrod. Here we have quite a different situation, both factually and legally. There is no proof of similar accidents, nor can anyone seriously contend that a pencil in the hands of a school pupil is a dangerous instrumentality. This is one of those events which could occur equally as well in the presence of the teacher as during her absence. It is not unlike the situation in *Maurer v. Board of Educ. of City of N. Y.* (294 N. Y. 672), in which we affirmed the dismissal of the complaint on the grounds of no causal relation where the plaintiff had been injured by having a finger stuck into his eye by another boy swimming in the same pool but in a direction opposite to instructions of the coach. (See, also, *Graff* v. *Board of Educ. of City of N. Y.*, 258 App. Div. 813, affd. 283 N. Y. 574; cf. *Clark* v. *City of Buffalo*, 288 N. Y. 62; *Berner* v. *Board of Educ.*, 286 N. Y. 174.)

The judgment should be affirmed, without costs.

CONWAY, J. (dissenting). In New York City, as time passes and we become more communal in practice as a result of population growth, economic pressure and other factors, we shall be more and more dependent upon kindergarten and grade school teachers, as well as baby sitters and day care nursery school directors or nurses in the basements of New York City housing and similar developments, for child care as well as education of our children. In New York City the situation materially differs in degree from that existing throughout the rest of the State. The Legislature seems to have recognized this fact and, as a result, in 1937, added two sections to the Education Law. Section 881-a (now § 2510) provided for the direct liability of a board of education in a city having a population of one million or more inhabitants. (*Reeder* v. *Board of Educ. of City*

*of N. Y.*, 290 N. Y. 829.) Section 569-a (now § 3023) imposed a somewhat less direct liability upon a board of education, trustee or trustees in any school district having a population of less than one million. Consequently, a high standard of supervision and care in the crowded schools of New York City, requiring as they do part-time classes in order to accommodate the number of pupils, should be imposed upon principals and teachers. Parents do not send their children to school to be returned to them maimed because of the absence of proper supervision or the abandonment of supervision. It is for these reasons that we feel it necessary to write out our views which are not in accord with those of the majority.

The plaintiffs, after a jury verdict in their favor, recovered judgment against all of the defendants: The board of education of the city of New York, the principal of the public school, and a teacher in the same school. The Appellate Division, Second Department, however, reversed on the law and facts and dismissed the complaint on the law. In that situation, '' We must presume that the jury found every fact in favor of plaintiffs necessary to sustain their verdicts if there was any supporting evidence. In examining the record to see if proof of the facts established a cause of action, appellants must be given ' the benefit of every favorable inference which can reasonably be drawn.' (*Faber* v. *City of New York*, 213 N. Y. 411, 414.)'' (*Isaac* v. *Town of Queensbury*, 277 N. Y. 37, 42–43.) We, of course, disregard the testimony in support of the defense which the jury rejected.

The facts, thus ascertained, are these: Herbert T. Ohman (hereinafter called plaintiff) was a pupil in class 7-B of a Brooklyn public school. On the day of the accident, he was thirteen years of age. At 1:00 P.M. on that day, his class met in room 411 for what was scheduled to be a double period of drawing instruction. The teacher referred to above was supposed to be in charge of the drawing class in that room. We shall refer to her hereafter as teacher.

Plaintiff, together with other boys, had been picked by a lower grade teacher who was in charge of school supplies to assist in carrying such supplies from a ground-floor stockroom to different portions of the building. At about 1:15 P.M., plain-

tiff delivered some supplies, i.e., " a few baskets and some books that came in the baskets ", to room 411. The teacher was not there at the time. Another pupil, one Lupo, was standing in front of the classroom. He said that the teacher was out and that she had left him in charge of the class. At that time, a few of the pupils " were fooling around and talking in the class." They were " throwing balls of paper and smacking somebody in the back of the head \* \* \* and things of that sort." Plaintiff left the supplies and returned to the stockroom. There, he was given another load of supplies which he carried to the library — also located on the fourth floor. En route, at about 1:45 P.M., he saw the teacher sitting on a stool inside a supply closet or storeroom on the fourth floor. She was sorting paper on shelves. This storeroom was about forty-eight feet from the nearest door of room 411 and was around an L-shaped corner. It was about twenty-five feet from the nearest door of room 411 to the corner, and about twenty-two or twenty-three feet from the corner to the storeroom.

Plaintiff then made two more trips to the library with supplies. Each time, he passed the storeroom and saw the teacher there on a stool or stepladder. On his next trip, he again delivered supplies to room 411. When he entered the room, the teacher was still absent. He observed that the wicker baskets he had previously deposited there " were being kicked around in the front of the room, just the same way as it was the last time." The pupils " were throwing things around and talking to each other and doing as they pleased." While he was sorting out the supplies at the platform in front of the room, plaintiff was hit in the leg by a basket which had been kicked. He then brought some of the supplies to the storeroom where the teacher was still working. At her direction, he put them on the floor and returned to the supply room on the ground floor. This time, he was given a stack of six long boxes containing paint. He had to rest his chin on the topmost box to keep it from tipping to the side. In this fashion, he carried them up to room 411. It was about 2:15 P.M.

Plaintiff was preceded into the room by one De Mauro, another thirteen-year-old pupil, who was also bearing supplies. De Mauro dropped his supplies in the front of the room and started to

walk to the rear by way of the center aisle. Plaintiff then entered the room by the rear door and started to walk up the center aisle. The teacher was still absent from the room and the children, as before, were walking around, throwing things, "fooling around" and "having a lot of fun in her absence." At that point, Lupo, the boy who had been left in charge of the class, called to De Mauro, "Here is your pencil". With that, he threw the pencil at De Mauro. It was an overhand throw and it was fast. De Mauro ducked out of the way, and plaintiff, who was behind him, was hit in the left eye by the point of the pencil which came spinning through the air at him. The point entered the center of his eyeball, lacerating the cornea and piercing the lens capsule behind the cornea. After many operations he is practically sightless in that eye.

The principal of the school, a defendant, was examined and cross-examined at the trial as to what constituted proper supervision under his rules and regulations, promulgated pursuant to the by-laws of the board of education, at the time of the accident. No documentary evidence of such rules and regulations was submitted. The principal testified that "If the teacher was required physically to go outside the immediate confines of her classroom in connection with her teaching and was still consciously supervising the classroom, she violated no regulation." He said that the storeroom fifty feet down the hall and around the corner was within "the immediate confines" of the classroom. If the teacher were there for *five* minutes, he said it would depend upon the teacher and the class as to whether there was proper supervision. He admitted that "If the teacher neglected her class during that entire ten-minute period, I would not regard that as proper supervision." Nor would he regard it as proper supervision, he stated, if the teacher were away for *an hour and fifteen minutes.*

There can be no doubt that the jury was justified in finding, upon this evidence, that the teacher was absent from her classroom for an hour and fifteen minutes, i.e., from one o'clock, when the class met, until two fifteen, when the accident occurred; and further, that such failure, under the standards set by the principal, constituted a failure of supervision or improper supervision on her part. Likewise, the jury was justified in finding that the principal was negligent in failing to adopt adequate reg-

ulations insuring proper supervision of classes in his school and in assigning or permitting the performance of additional duties by the teacher, during scheduled teaching hours, so that she was away from her classroom for an hour and fifteen minutes. The Appellate Division does not seriously dispute the fact that the evidence warranted a finding of negligence on the part of the teacher and the principal. It is undisputed that the negligence of the teacher and the principal is imputable to the board of education of the city of New York and renders it liable under section 2510 of the Education Law and *Reeder* v. *Board of Educ. of City of N. Y.* (290 N. Y. 829, *supra*).

The reason assigned by the Appellate Division for reversal was as follows: " \* \* \* In our opinion there was no causal relation between the absence of the teacher from the room and the happening of the accident. There is no proof upon which a finding that the teacher's absence from the room was a proximate cause of the accident would be warranted. The proximate cause of the accident was the unforeseen act of the pupil who threw a lead pencil to another pupil. \* \* \* " (275 App. Div. 840.) We fail to see how the issue of proximate cause can thus be decided against plaintiff *as a matter of law*. On the contrary, under the circumstances here presented, we think the jury may properly have found that the teacher's dereliction of duty was the proximate cause of the accident.

When a large number of children are gathered together in a single classroom, without any effective control or supervision, it may reasonably be anticipated that certain of them may so act as to inflict an unintentional injury upon themselves or their classmates. Children have a known proclivity to act impulsively without thought of the possibilities of danger. It is precisely this lack of mature judgment which makes supervision so vital. The mere presence of the hand of authority and discipline normally is effective to curb this youthful exuberance and to protect the children against their own folly. On the other hand, it may reasonably be anticipated that the prolonged absence of such authority at a time when the children's activities are usually supervised will result in just such a situation as is demonstrated in the instant case.

Here, the jury could find that, because of the teacher's absence from the classroom for over an hour, the pupils became

progressively more restless and unruly, that they were throwing and kicking things around the classroom, and that Lupo, the appointed monitor, in keeping with the prevailing spirit of horseplay and disorder, threw the pencil at De Mauro, who ducked out of the way so that it spun past him and hit plaintiff in the left eye. It is a legitimate inference upon this record that the exercise of greater supervision,. or, indeed of any supervision, on the part of the teacher would have averted the accident and its tragic aftermath. As we stated recently in *Kingsland* v. *Erie Co. Agric. Soc.* (298 N. Y. 409, 424): " The issue of proximate cause was also properly left to the jury. In *Carlock* v. *Westchester Lighting Co.* (268 N. Y. 345, 350), we said: ' Where harmful consequences are brought about by intervening and independent forces, *the operation of which might have been reasonably foreseen*, there is no break in the chain of causation of such character as to relieve the actor from liability.' " (Emphasis in original.) Here, the infliction of an injury upon one of the children by reason of the uncontrolled horseplay and disorder should reasonably have been foreseen as a consequence of the teacher's failure to supervise the classroom for over an hour. At least, it is clear, a jury might so find.

The existence of the duty on the teacher to supervise her pupils, and further authority for the conclusion that failure in that respect may be the proximate cause of injuries resulting from impulsive and violent conduct of the pupils themselves may be found in *Hoose* v. *Drumm* (281 N. Y. 54). There, plaintiff lost an eye when he was struck by a stalk of goldenrod thrown by another boy when they were at play, during a recess, on part of the school property out of sight of the teachers. We said in part (pp. 57–58): " * * * Teachers have watched over the play of their pupils time out of mind. At recess periods, *not less than in the classroom*, a teacher owes it to his charges to exercise such care of them as a parent of ordinary prudence would observe in comparable circumstances. * * *

" * * * The danger lay in the probability that the pupils would play as they did. The *effective cause* of the plaintiff's injuries was the failure to protect the boys against themselves. Any dereliction in this aspect was the fault of the teachers * * *." (Emphasis supplied.) That language, furthermore,

was necessarily approved in *Miller* v. *Board of Educ.* (291 N. Y. 25, 31). More recently, in *Applebaum* v. *Board of Educ. of City of N. Y.* (297 N. Y. 762) we affirmed a judgment in favor of an eleven-year-old schoolgirl who was injured by falling glass when a seven-foot window pole she was carrying struck and shattered a suspended light globe. She had been directed to open windows with the pole by the principal of the school, but she was without any supervision in performing the task and at the time of the accident. There was no claim of defect in the ceiling fixture and our decision rested upon the finding of faulty supervision.

In the instant case, the jury was entitled to believe the testimony of the plaintiff and De Mauro who stated that they saw the teacher away from the classroom and in the storeroom every time they passed with supplies and to find that she was absent from the classroom for one and a quarter hours. The only contrary testimony was by the defendant teacher whose credibility was at issue. Every fact necessary to support the jury's verdict which the jury could properly find from the evidence is presumed to have been found by it in order to support the verdict.

An ordinary layman, without any special knowledge or training, must, in some instances, anticipate subsequent conduct of children by which they may harm themselves. Whether such subsequent conduct could have been foreseen by the exercise of reasonable care and prudence under the circumstances has been held a question of fact for the jury. (*Tierney* v. *New York Dugan Bros.*, 288 N. Y. 16.) How much more should school teachers and principals be required to exercise reasonable care and prudence, under the circumstances, to anticipate and guard against dangerous conduct on the part of their youthful pupils affecting one another.

The judgment should be reversed and a new trial ordered, with costs to appellants to abide the event.

LEWIS, DESMOND, FULD and BROMLEY, JJ., concur with DYE, J.; CONWAY, J., dissents in opinion in which LOUGHRAN, Ch. J., concurs.

Judgment affirmed. [See 301 N. Y. 662.]