J. Irwin Shapiro, J.
In this action for personal injuries sustained by the infant plaintiff and for loss of services by his guardian ad litem, the jury found a verdict for the plaintiffs. The court is now called upon to decide the defendants’ motions to dismiss made at the end of the plaintiffs’ case, and at the end of the entire case, and their motions to set aside the verdict and for a dismissal of the complaint.
In disposing of a motion to dismiss a complaint at the end of the plaintiffs ’ case the court is guided by the rule ‘ ‘ that the facts adduced at the trial are to be considered in the aspect most favorable to plaintiffs and that plaintiffs are entitled to the benefit of every favorable inference which can reasonably be drawn from those facts ”. (Sagorsky v. Malyon, 307 N. Y. 584, 586.)
“ A motion to dismiss a complaint made at the close of the entire case is substantially equivalent to a motion for a directed verdict made at that point (Civ. Prac. Act, § 457-a, subd. 3; Fifteenth Annual Report of N. Y. Judicial Council, 1949, pp. 67, 253-256). In such case the test to be applied by the trial court is whether ‘ it would be required to set aside a contrary verdict for legal insufficiency of evidence ’ (Civ. Prac. Act, § 457-a, subd. 1); in other words, whether there has been an actual defect of proof, and hence, as a matter of law, the party moved against was not entitled to recover. (Blum v. Fresh Grown Preserve Corp., 292 N. Y. 241, 245.) ’ ’ (Weinrib v. Krich, 17 Misc 2d 868, 869 [App. Term, 2d Dept.].) The presence of “ any evidence in the record — direct or circumstantial — from which defendant’s negligence may be reasonably inferred ” requires the case to be submitted to the jury. (Lubelfeld v. City of New York, 4 N Y 2d 455, 460; Verdino v. Hayes, 10 A D 978.)
Thus, the question is whether the facts, looked at from an angle most favorable to the plaintiffs, make out a prima facie case. What then, viewed in that light, are the facts?
The infant plaintiff, a 12-year-old student in one of the public schools in Queens County, sustained injuries on November 14, 1952, under the following circumstances: His seventh grade teacher detained his class as punishment for some minutes after *12 the beginning of the usual lunch hour. At the end of that time, he formed his pupils into two lines, placing plaintiff at the end of one line. He then escorted the class down one flight of stairs, where there was another teacher with a class, at which point he left.. That teacher, who also had detained her class, held it up at her stairway entrance until after the plaintiff’s class had passed by on the staircase. She then released her class and it began to follow the plaintiff’s class down the staircase at which time she left.
As both classes were proceeding down the stairway the plaintiff was struck from behind at the third step below the first-floor landing. He was able to keep himself from falling by grasping the railing, but was again struck with force sufficient to wrest his hand from the railing and to precipitate him down the entire flight of stairs to the ground floor where he was picked up. A short interval later he was found crying by another teacher, a Mr. O’Sullivan, whose testimony, taken at an examination before trial of the defendant, was read into the record. Mr. 0 ’Sullivan testified, in part, as follows:
“A. I was passing from duty—
“ Q. From what? ■ A. My duty; all teachers are on stair duty to prevent accidents and that duty starts at approximately five minutes of twelve to five after twelve. We wait until all classes are gone. I was on the third floor.” (Emphasis supplied.)
Under such circumstances, have the defendants breached any duty owed to the infant plaintiff and if they did is there any causal connection between that breach of duty and the injury to him?
The plaintiffs say yes to both questions citing Lopez v. City of New York (4 A D 2d 48, affd. without opinion 4 N Y 2d 738), and the defendants answer no, citing a number of cases, but relying principally upon Ohman v. Board of Educ. of City of N. Y. (300 N. Y. 306). A superficial reading of the two cases would seem to indicate an inconsistency in the results reached but that seeming inconsistency is more apparent than real for a careful and detailed analysis of the ratio decidendi underlying both cases reveals the basic distinction between them.
In Lopez the infant plaintiff was in a playground maintained by the City of New York. He began to use a swing in the fenced in swing area, an enclosure 26 feet by 42 feet. There were about 15 to 16 children playing there. He surrendered his swing to a girl who immediately stood up on it and began to swing. He backed away from the swing as far as he could go to the area of the enclosure where there were a group of boys pushing each other, but he was unable to back up far enough and was struck *13 by the seat of the swing. No playground attendants were in the area shortly before and at the time of the accident and there were at that time between 60 and 70 children in the playground.
The basis of the Appellate Division’s determination sustaining the plaintiff’s right to recover in that case was the failure of the defendant to provide any supervision of the playground which would have prevented the collection of a milling group or crowd around the swing area and within the orbit of the swing. The plaintiff in the Lopez case was hurt because he was unable to get out of the orbit of the swing because of the crowding, which the lack of supervision permitted to exist. Thus, there, the negligence of the defendant in failing to properly supervise the play area was the direct cause, or so a jury could find, of the injury to the plaintiff.
In Ohman the Court of Appeals refused the plaintiff a recovery and sustained a dismissal of the complaint. There, too, there was an absence of supervision, but the basic and underlying difference is that there the absence of supervision was not the proximate cause of the injury. In that case the court described the facts as follows (p. 308):
“On November 15, 1938, at about 2:15 p.m., the plaintiff, Herbert Ohman, then aged thirteen years and a pupil in drawing class 7-B, Public School No. 238, Brooklyn, under the jurisdiction of the board of education, sustained a severe permanent injury when struck in the left eye by a lead pencil. The pencil had been thrown by a classmate in the direction of a third classmate with the remark ‘ Here is your pencil ’. The boy for whom it was intended ducked and the pencil hit the plaintiff who was standing directly behind him.
1 ‘ The accident occurred while the teacher in charge was temporarily absent from the classroom for the purpose of sorting and storing in a corridor closet an issue of schoolroom supplies, a routine task forming part of her usual duties. The testimony as to the length of time the teacher was out of the room is conflicting (which is not at all surprising as nine years elapsed between the date of the accident and the trial) but whether for 1 more than an hour ’ as contended by the plaintiff or ‘ less than a minute ’ as shown by the defendant’s witnesses is wholly immaterial. The most favorable inference in any event is that the teacher was not in the room when the accident occurred. ’ ’
Despite the fact that the jury could have properly found that the teacher was absent “ for more than an hour,” the Court of Appeals denied the plaintiff a recovery saying (pp. 308-309):
“Nonetheless, it does not follow that such absence was the *14 proximate producing cause of the injury, which was due, as we see it, to the tossed pencil. Whether it was done mischievously and heedlessly or wantonly and willfully, or with the serious purpose of returning the pencil to its owner, it was the act of an intervening third party which under the circumstances could hardly have been anticipated in the reasonable exercise of the teacher’s legal duty toward the plaintiff. * * * Here even ff we assume without conceding that the teacher was negligent in leaving the room for any purpose, for any length of time, it does not follow that the board is liable for the consequences of an unforeseen act of a third party. This would constitute the board an insurer, and we would no longer have need to consider the applicability of long-established and well-recognized rules of common-law negligence. By such standards, a teacher may be charged only with reasonable care such as a parent of ordinary prudence would exercise under comparable circumstances.”
Continuing on, the court said (p. 310): “ This is one of those events which could occur equally as well in the presence of the teacher as during her absence. It is not. unlike the situation in Maurer v. Board of Educ. of City of N. Y. (294 N. Y. 672), in which we affirmed the dismissal of the complaint on the grounds of no causal relation where the plaintiff had been injured by having a finger stuck into his eye by another boy swimming in the same pool but in a direction opposite to instructions of the coach.”
In our case there is no proof nor any claim of overcrowding, congestion or milling on the staircase. Plaintiffs’ entire right to recovery is predicated upon the fact that there was no teacher present to supervise the boys while they were descending the staircase and during which descent a pupil from behind either deliberately and willfully or heedlessly, twice in rapid succession, punched the infant plaintiff in the back. In the language of the court in the Ohman case “ This is one of those events which could occur equally as well in the presence of the teacher as during her absence.” Mr. O’Sullivan, whose examination before trial was read into the record in support of the plaintiffs ’ case, did testify that it was the duty of the teachers to be present on the staircase “ at approximately five minutes of twelve to five after twelve ” while the children were using the staircase, but this was ‘ ‘ to prevent accidents. ’ ’ The injury caused to the plaintiff here was not by an “ accident,” but by the intervention of a third party in perpetrating an assault on the infant plaintiff.
In sum, the basic and crucial difference between the Lopez case and the Ohmam case is that in the Lopez case a jury could *15 properly find negligence in the defendant’s allowing a crowd to collect so that the plaintiff, who was endeavoring to get out of the orbit of the swing could not do so, whereas in the Ohman case, even if there was negligence on the part of the teacher in leaving the classroom unattended for a long period of time there was no legal causal connection between her actions and the willful and wanton or careless act of one of the pupils in causing injury to another.
Similarly in this case even if we assume that there was negligence on the part of the teachers in not remaining on the stairway landings until the children had all left, there is no legal causal connection between their absence and the apparent deliberate and willful punching of the plaintiff by someone behind him.
We have already noted that there was in this case no overcrowding or milling on the staircase, but rather the intervention of a third person without any negligent act or omission on the part of the plaintiff which caused the injury to the infant plaintiff. Surely, it would not be contended that if two boys were walking down the staircase in the school, one behind the other, that supervision by the defendant Board of Education would be required or that there would be any liability on its part if the boy behind pushed the boy in front down the steps. Under such circumstances no one, it is assumed, would contend that the Board of Education was liable legally. From a legal standpoint, the situation here is exactly the same.
Accordingly, the court is constrained to grant the defendants ’ motions to set aside the verdict and to dismiss the complaint with an exception to the plaintiffs. (May v. Board of Educ., 269 App. Div. 959, affd. 295 N. Y. 948; Sanchick v. Board of Educ. of City of N. Y., 11 Misc 2d 876; Ginsberg v. Board of Educ. of City of N. Y., 272 App. Div. 774; Wilber v. City of Binghamton, 296 N. Y. 950.)