In decisions Nos. 1–5 the court is: Present — Coon, J. P., Gibson, Herlihy, Reynolds and Taylor, JJ.

■ (A) THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. LA VERNE A. WEIRES, JR., Appellant. (B) In the Matter of the Claim of JOSEPH MULLEY, Appellant, v. SACKETT & WILHELMS LITHO CORPORATION et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent. (C) CAROLYN JAHRLING, Appellant, v. MARGARET WALLING et al., Respondents, et al., Defendant. (Action No. 1.) RICHARD MCDOWELL, Appellant, v. MARGARET WALLING et al., Respondents. (Action No. 2.) — [In each action] Motions to dismiss appeals granted by default, without costs.

■ In the Matter of the Claim of NELSON PRINCE, Appellant, v. HOTEL INVESTORS, INC., et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal dismissed, without costs, unless appellant shall file and serve record, brief and note of issue for the November 1962 Term on or before October 10, 1962, in which event motion denied.

■ (A) THE PEOPLE OF THE STATE OF NEW YORK ex rel. RICHARD NOWLIN, Appellant, v. W. CECIL JOHNSTON, as Director of Dannemora State Hospital, Respondent. (B) ARNOLD STRUL, Appellant, v. MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent. (C) In the Matter of MARIA L. CASTELL, Appellant. MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent. (D) In the Matter of the Claim of HERMAN BAIDA, Appellant. MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent.— [In each action] Permission to prosecute appeals as poor persons granted. Appeals may be perfected upon one typewritten copy of the records and five typewritten copies of the briefs.

■ (A) THE PEOPLE OF THE STATE OF NEW YORK ex rel. PAUL NAVARRO, Appellant, v. J. EDWIN LA VALLEE, as Warden of Clinton Prison, Respondent. (B) THE PEOPLE OF THE STATE OF NEW YORK ex rel. ARTHUR A. WANNAMAKER, Appellant, v. J. EDWIN LA VALLEE, as Warden of Clinton Prison, Respondent. (C) In the Matter of ARTHUR A. WANNAMAKER, Appellant, v. J. EDWIN LA VALLEE, as Warden of Clinton Prison, Respondent. (D) In the Matter of ARTHUR A. WANNAMAKER, Appellant, v. W. M. WALLACK, as Warden of Wallkill Prison, Respondent. (E) THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOHN J. MESSINA, Appellant.— [In each action] Permission to prosecute appeals as poor persons granted. Appeals may be perfected upon one typewritten copy of the records and five typewritten copies of the briefs. Motions in all other respects denied.

■ (A) THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. BURTON GRAHAM, Appellant. (B) In the Matter of the Claim of GEORGINA CRUZ, Appellant. UNEMPLOYMENT INSURANCE APPEAL BOARD OF THE STATE OF NEW YORK, Respondent.— Time to perfect appeal extended 90 days.

### (July 26, 1962)

■ HARRY MUNSON, JR., an Infant, by HARRY MUNSON, SR., His Guardian ad Litem, Respondent, v. BOARD OF EDUCATION OF CENTRAL SCHOOL DISTRICT No. 1 of the Towns of Westport, Essex, Moriah, Elizabethtown and Lewis, et al., Appellants.

APPEAL from a judgment entered upon the verdict of a jury rendered at a Trial Term, Supreme Court, Essex County.

Memorandum by the Court. Plaintiff was injured while using an ice slide on a slope on the school premises of defendant Board of Education when a fellow pupil grabbed at him causing him to lose his balance and fall. He was then 12 and one-half years old. He testified he had gone down the slide "about ten or twelve times" before the fellow pupil caused his fall. A judgment has been entered in favor of plaintiff after trial. We are of opinion a case has not been made out against defendants. The slide was on snow and ice about 30 feet long and "fairly steep", but there was no proof that the slide, made on the bank of ice and snow by the children themselves, was a dangerous "defect" in the premises. There is no proof of prior injuries occurring in use of the slide; nor any proof that the slide on which plaintiff was injured was inherently dangerous. Slides on ice and snow have always been used by children wherever there has been ice and snow.

Thus this case is not governed by the rule in *Miller* v. *Board of Educ.* (291 N. Y. 25), which rested on a defect in a school building; or by *Decker* v. *Dundee Cent. School Dist.* (4 N Y 2d 462), where a practice obviously dangerous (jumping from a five-foot tier) was itself the cause of injury. Nor is it governed by *Selleck* v. *Board of Educ.* (276 App. Div. 263) where bicycle driven on the school premises when pupils were waiting for busses was found both to be dangerous and itself to have been the cause of plaintiff's injury.

Here the unexpected intervention of the fellow pupil caused plaintiff to lose his balance and was the direct cause of the injury. This sort of causation has been held in a number of school cases not to create a liability against the school board. One of the leading authorities in this direction is *Ohman* v. *Board of Educ.* (300 N. Y. 306) where a lead pencil thrown by another pupil while a teacher was temporarily out of a classroom was held no basis for liability. Of this accident the court said it was "the act of an intervening third party which * * * could hardly have been anticipated" (p. 309). Due consideration was there given by the court to the possibility that the pupil who threw the pencil might have acted, as children sometimes do, "mischievously and heedlessly or wantonly and wilfully". In the same direction are *Pollard* v. *Board of Educ.* (280 App. Div. 1033); *May* v. *Board of Educ.* (269 App. Div. 959); *Wilber* v. *City of Binghamton* (271 App. Div. 402); *Bertolla* v. *Board of Educ.* (1 A D 2d 973) and *Coulter* v. *Roman Catholic Church of St. Ignatius* (16 A D 2d 653).

Liability in *Germond* v. *Board of Educ.* (10 A D 2d 139) was sustained where the very danger which should have been foreseen, the playing of softball by older pupils near a group of young children, was itself the cause of injury and occurred in the presence of a teacher.

The judgment should be reversed on the law and complaint dismissed, without costs.

HERLIHY, J. (dissenting). This case falls within the well-defined and long-established pattern of school liability premised upon either a failure to have adequate rules, or if such rules, the failure to properly enforce them.

The reversal by the majority is based upon the sole ground that the intervention of a fellow student was a direct cause of the accident and created no liability as to the school board. To so hold, under the present facts, is contrary to many cases where liability has been found as the result of some form of intervention, to wit, baseball bat, bicycle, a fellow student or a teacher, and others. The majority give no consideration to the failure to have adequate rules, or failure to enforce them, or the foreseeability of an accident on the slide.

In *Selleck* v. *Board of Educ.* (276 App. Div. 263, motion for leave to appeal denied 300 N. Y. 764) the plaintiff was waiting for a bus, and when still on the

school lawn near a sidewalk, he became engaged in a scuffle with another boy who pushed him toward the ground. As he was falling, he was struck by a bicycle ridden by an older boy. There were no rules or regulations prescribed by the Board of Education concerning the operation of bicycles on the school grounds and the principal had made none. The court said at page 267 : " There was no proof in the present case of a dangerous condition of the school property *but the jury might find* that unrestricted bicycle riding on that part of the grounds where small pupils congregated created *a dangerous situation*. It is practically conceded that neither the board nor the principal made any rules or regulations relative thereto. In the absence of such rules and regulations the jury might also find that the supervision provided was entirely inadequate. *Whether the failure of the defendants in these respects was a proximate cause of the accident is an issue over which reasonable minds might differ, and hence an issue of fact arose which was for the jury to resolve.* So far as the issue of notice is concerned it was for the jury to say whether defendants in the light of all the circumstances should have known that a situation of some danger existed." (Emphasis supplied.)

In *Germond* v. *Board of Educ.* (10 A D 2d 139) the plaintiff, seven years of age, was injured on the school playground when she was struck in the face by an older girl playing softball. In that case, this court said at page 141: " Thus, both on the failure to enforce adequate rules in respect of the playing of games on the playground and upon the failure to provide adequate supervision a case prima facie has been made out against the defendant Board of Education sufficient to * * * [justify] a verdict for plaintiff."

This court further said at page 141: " Reasonable efforts must be made by the board to enforce salutary and adequate rules; and a liability may be incurred for a failure to enforce, as well as to make, a rule."

The cases cited by the majority are not applicable to the present factual situation; tripping over a wire, an assault or other act not necessarily associated with school vigilance. Such acts were not readily foreseeable as distinguished from the present circumstances where the board had both prior notice and knowledge of the dangerous practice of going down slides standing up. The record clearly demonstrates that under proper supervision the children were not allowed to pursue such practice but were required to sit on the slide. If the rule had been enforced, a bump by an intervenor would not have caused the injuries sustained by this plaintiff.

The defendant school had a general dismissal at 3 :15 in the afternoon. The majority of the children went directly to their buses but the plaintiff was one of the students who waited for a 3 :25 bus, referred to in the record as a " late bus ". The record establishes that the principal, under the aegis of the school board, established certain rules; one of which related to the late bus children who were left without supervision between 3 :15 and 3 :25 and which rule directed that they remain next to the school building. The plaintiff and other children denied knowledge of such rule while other children admitted knowledge of the same.

The icy slide was built on a steep bank 100 feet from the school entrance and within the periphery of the playground. On the day in question, the plaintiff and a number of other children went directly to the slide, which appears not to be unusual. While the plaintiff was going down the slide standing up — contrary to the rule of the school — he came in contact with another pupil, causing him to lose his balance, fall down and sustain the injuries herein. There was no teacher present at the time.

The record shows that it was known that the children waiting for the late bus went to the playground after dismissal from school. The record further shows that the slide was dangerous; that a dangerous practice was involved in by the

children going down standing up; that a teacher was stationed there during the noon hour to prevent such practice and that the principal had knowledge of the after-school activities on the slide but had not undertaken to provide supervision. The facts in this case made the happening of a possible accident readily foreseeable. (*Waldorf* v. *Sorbo,* 10 A D 2d 226, affd. 9 N Y 2d 703.) It appears from the record that one of the main purposes of supervision at the slide was to prevent such horseplay and scuffling as occurred here and the jury had the right to find that if there had been such proper supervision, the accident would not have happened.

To answer the argument of the majority, the intervention by a fellow student at the slide was foreseeable and a reason for providing the supervision, at other times, but lacking on this occasion and thereby causing the accident. One of the teachers was questioned as follows: "Q. But, even having had the instruction some pupils did that, didn't they, slide down standing up? A. Not if you could possibly avoid them doing it. Q. But some of them have done it, have they not, while you have been supervising the play-ground? A. But they were punished if they did it. Q. Yes, all right. Now, what would you do for punishment? A. Personally, I sent them in from the playground, in to the teacher who had a noon-hour duty and they didn't come out until perhaps a week. Q. I see. There was usually some severe discipline given for that, correct? A. I don't know if it was severe, but it was what they thought was appropriate. Q. That is what I mean. Have you ever seen the children, while playing on the bank, while you were on outside supervision, duty, scuffling or pushing or grabbing at one other, doing that sort of thing, children, while playing on the bank? A. Have I seen them scuffling? Q. Yes. A. Yes. Q. And then you would stop that or caution them not to continue it? A. True. Q. And would it be correct, Mrs. Geyer, to say that by your being there on the playground and particularly on the ice slope, supervising there, that probably accidents and occurrences of that type were prevented, would that be fair? A. Yes."

Here the authorities had knowledge of the dangerous practice, and knew that proper supervision was necessary and essential to enforce its rule against going down the slide standing up and to deter the horseplay and scuffling. The hiatus in supervision between dismissal and the late bus was known to the authorities.

The facts in this case seem to fit within *Decker* v. *Dundee Cent. School Dist.* (4 N Y 2d 462) where the court said at page 464: "The duty of the board as to supervision * * * is unqualified, and has been construed as mandatory [citing cases]. The jury could reasonably infer that, had there been adequate supervision in the past, the danger would have come to the attention of some person in authority, and steps taken to prevent its repetition."

Under the facts in this case, the intervention was something that had been anticipated and required proper supervision, which was lacking at the time the plaintiff sustained the injury.

The judgment should be affirmed, with costs.

Bergan, P. J., Gibson, Reynolds and Taylor, JJ., concur in Memorandum by the Court; Herlihy, J., dissents, and votes, to affirm, in a memorandum.

Judgment reversed on the law and complaint dismissed, without costs.