JUDITH DE MARCO, an Infant, by ROSARIO V. DE MARCO, Her Guardian ad Litem, et al., Respondents, *v.* CITY OF ALBANY, Appellant.

Third Department, November 21, 1962.

*Towner & Erway* (*William R. Crotty* of counsel), for appellant.

*Franklin P. Gavin* and *Richard A. Kohn* for respondents.

*Per Curiam.* The injury to the infant occurred on August 2, 1956 in the City of Albany's Washington Park, at an area thereof known as the "green swings". The infant's mother testified that she took her daughter to the main playground of the park on the day in question at about 1:00 P.M. However, there was a long line of parents and children waiting to use the facilities of the main playground and after a short wait, she was directed by one of the counselors to take the children to the less-crowded area of the green swings. While waiting for a swing to be vacated she observed 8 or 10 teen-agers running and jumping off the platform of the swings onto the flagstone terrace. The swings themselves were of a wooden frame with a bench on each side and a connecting platform between the benches. She testified further that she saw no caretaker anywhere in the area on this day and that no one, other than some of the mothers, made any effort to make the teen-agers behave. After a wait of about 30 minutes one of the swings became available. She placed her daughter upon it. Three or four minutes thereafter two teen-age boys, who had been jumping in and out of the swing next to that of the infant, grabbed her daughter's swing from the back, causing the infant to fall upon the flagstone and sustain injuries. She also stated that no custodian came to her assistance after the accident.

The defendant's employees, the park superintendent and the park foreman, testified that there was a man assigned to the green swings area all of the time and that this was done because of the great amount of disturbance caused by the teen-age children in this particular area. The person put in charge was a 70-year-old man, classified as a laborer. His duties were specifically to protect the children and regulate the use of the swings.

The employee assigned to this area testified that he was often unable to keep order and had to call the police to quiet the teen-age boys. He stated that the boys often interfered with children using the swings. During the hours of his supervision he was directed not to leave the area for any reason without first obtaining someone else to take his place. This employee testified, in direct contradiction to the infant's mother, that he was present on the day of the accident and that he witnessed the accident. He further testified that he warned the infant's mother not to place the infant upon the swing because he thought she was too young. He stated that on the afternoon of the accident

there were no teen-age boys (or anyone else) in the green swing area who were committing acts of rowdyism; that no third person caused the infant to be propelled out of the swing and that the child slid out of the swing when she leaned too far over the seat.

The question presented upon this appeal is whether, on this record, it can be found the city was not negligent as a matter of law.

The first contention of the appellant is that the mother of the infant had the primary duty of supervision. In effect, the argument is that the mother was guilty of contributory negligence. This argument is of no merit because section 73 of the Domestic Relations Law expressly provides that the contributory negligence of the parent cannot be imputed to the infant. (*Corveddu* v. *Blumner,* 10 A D 2d 712.) Furthermore, it appears affirmatively that the city undertook control of rowdyism at this area and did not depend upon adults to protect their children from such " roughnecks ".

The second contention of the appellant is that the proximate cause of the accident was not lack of supervision on the part of the city, but rather it was the unforeseeable act of third parties.

It was stated by the Court of Appeals in *Caldwell* v. *Village of Island Park* (304 N. Y. 268, 274–275) that: " Where a municipality undertakes to maintain an area for recreation in general some degree of supervision ought to be exercised to assure that the area is reasonably fit for that purpose. Under ordinary circumstances, the necessary degree of supervision of such an area may well be slight and may require no more than a casual or periodic inspection. But when in the discharge of that duty it is or should be apparent or it otherwise comes to the attention of a municipality that its park is being used by visitors as a site for criminal and patently dangerous activities and that such use is likely to be continued, we think that the municipality may not ignore the foreseeable dangers, continue to extend an invitation to the public to use the area and not be held accountable for resultant injuries."

The present case does not present a criminal situation, but the jury could have found there was a dangerous situation if adequate supervision was not afforded and that the resulting accident was foreseeable.

The court stated in *Lopez* v. *City of New York* (4 A D 2d 48, 51, affd. 4 N Y 2d 738) that " The duty ' to protect children of tender years and experience, at least from its own negligence ' rested upon the respondent (*Van Dyke* v. *City of Utica,* 203 App. Div. 26, 29), particularly when charged with knowledge, to be

derived from its own departmental regulation as in the case at bar, that some sport conducted on its playgrounds might cause injury (*Lane* v. *City of Buffalo,* 232 App. Div. 334)."

In the instant case, the jury could find knowledge of the danger presented by teen-age children at this particular swing area, and that the supervisor had ordered constant supervision of the area.

The case of *Ohman* v. *Board of Educ. of City of N. Y.* (300 N. Y. 306) is *not* authority for holding that every time a third person is involved there can be no liability on the part of the governmental subdivisions. Rather, the *Ohman* case, stands for the proposition that had the teacher been there, such a spontaneous act could not have been prevented. The point in the instant case is that proper supervision of the area would have resulted in the boisterous teen-agers either being expelled from the area or made to simply sit in the swings. In other words, the jury could find that proper supervision would have resulted in no injury.

The record in this case would permit the jury to find either that there was no supervision at the time of this accident or that there was inadequate supervision at the time of the accident and either finding would be sufficient to predicate negligence against the city.

There were triable issues of fact for the consideration of the jury and we cannot say that the resultant verdicts should be reversed as a matter of law.

The judgment and order should be affirmed, with costs.

BERGAN, P. J., COON, GIBSON, HERLIHY and TAYLOR, JJ., concur.

Judgment and order affirmed, with costs.