Fourth Department, June, 1973

(June 1, 1973)

■ Stanley Cherry, an Infant, by Dolly Cherry, His Mother, et al., Respondents, v. State of New York, Appellant. (Claim No. 53453.) — Judgment reversed on the law and facts, without costs, and claim dismissed. Memorandum: The claimant, Stanley Cherry, a 15-year old boy, was injured while working with five other boys to build a tent platform at the Annsville Youth Camp. While striking a nail with his hammer, it flew out of the wood and struck him. Stanley had hammered nails before he came to the camp and he had been helping to build the tent platform all week. Before starting the work earlier in the week the boys had been given instructions as to the work to be done and the methods to be employed. Immediately before the accident, the boys were supervised by an instructor and a camper's aide. At the time of the accident, the instructor had left to answer a telephone call. Liability has been fixed upon the State because of its failure to supply goggles to protect the boys and its failure to instruct or supervise them to see that the work was done safely. It is hard to imagine a more commonplace activity less fraught with danger than hammering nails, especially for boys who had already spent a week building the tent platform. One camper's aide to supervise five boys would seem to be more than adequate supervision for such a task. (See *Ohman* v. *Board of Educ.*, 300 N. Y. 306.) The testimony of the State's instructor that he would consider goggles to be necessary equipment while driving nails was nothing more than his personal opinion contrary to general knowledge. Section 409-a of the Education Law makes no such requirement and the Division of Youth has no regulation that goggles had to be worn by a camper while driving nails. Despite the court's comment in its decision that "Having driven hundreds of nails without the protection of goggles, it has been difficult for this court to accept the viability of such a safety requirement", it went on to find negligence on the part of the State "in permitting said safety regulation to be violated". Under all the facts, the State fulfilled any duty it owed to this claimant. (*Oakley* v. *State of New York*, 38 A D 2d 998, affd. 32 N Y 2d 773; *Mulberg* v. *State of New York*, 35 A D 2d 856, affd. 29 N Y 2d 916.) The judgment should be reversed and the claim dismissed. All concur except Cardamone, J., who dissents and votes to affirm the judgment, in the following memorandum: On June 12, 1970 the 15-year old claimant suffered a severe injury when a nail he was hammering flew up and lodged in his eye. He was part of a crew of youths constructing a 16 by 16 foot tent platform at the Annsville Youth Camp in Taberg, Oneida County, New York. His claim on the sole issue of liability was tried before the Court of Claims which determined that the State was liable by reason of its negligence and that such negligence was the proximate cause of claimant's accident. I agree. We may set aside the determination of the trier of the facts only if it may be said that he could not have reached this verdict on any fair interpretation of the evidence (*Lee* v. *Lesniak*, 40 A D 2d 756). The proof in that respect reveals that claimant, Stanley Cherry, was having difficulty trying to hammer into new wood the three-and-a-quarter inch long nails furnished him because the nails were bending and the boys "had to give them quite a sock to get them in." The Senior Vocational Instructor at the camp was the adult supervising and instructing this crew and worked right alongside them. He testified that he had instructed the boys to wear goggles as necessary safety equipment on this job because he had seen nails fly out of the 2 by 6's that were being used to construct the tent platforms. However the goggles were not issued to or worn by claimant that day. Claimant

was inexperienced in this work, and testified that before being placed at the Annsville Youth Camp although he had observed others building things by use of a hammer and nails, he had seldom used a hammer himself. Using a hammer and nail may often be considered a commonplace activity as the majority states, just as cooking, where it involves simply boiling water, is also an every day routine. These commonplace activities, however, are not always free from danger — such determination depends upon the specific activity pursued and the other circumstances relating to it including the experience of the individual. Driving a nail to hang a picture is not the same as driving a three-and-a-quarter inch spike into an eight foot long 2 by 6 board. Boiling water and boiling oil on a hot stove may both be characterized as cooking but one is commonplace and the other fraught with peril for an inexperienced 15-year old person. In recognition of the danger the campers would encounter, safety lectures on the use of equipment were supposed to be given to them as part of the regular routine at the Annsville Youth Camp at the conclusion of which each camper would sign a paper indicating that he had received the lecture. Camp records, however, indicate that claimant never received the safety lecture. At the time the accident occurred, the claimant was attempting to drive in his third or fourth nail in about the same place in the 2 by 6 and the adult instructor had left the crew for a phone call but had not instructed the campers to discontinue work until he returned. It is reasonable to believe that had the instructor been present he could have instructed claimant to select another spot to drive the nail, or assisted him in some other manner that might have aided in the prevention of this accident. In my view the safety regulations of the camp and the safety instructions of the adult supervisor responsible for this project were set forth to guard against a reasonably forseeable hazard or risk. The violation of them in not giving the required safety lecture and failing to provide the safety goggles was properly considered by the trial court as some evidence of negligence (*Danbois* v. *New York Cent. R. R. Co.*, 12 N Y 2d 234, 239; see, also, *Edkins* v. *Board of Educ.*, 287 N. Y. 505) and it could properly conclude from a fair interpretation of that evidence that the State failed in its duty to provide supervision reasonably adequate to the particular circumstances of this work project. Viewing all this evidence in a light most favorable to claimant, as we must, including the reasonable inferences which may be drawn therefrom (*Owen* v. *Rochester-Penfield Bus Co.*, 304 N. Y. 457), I dissent and vote to affirm the decision of the trial court. (Appeal from judgment of Court of Claims, in claim for damages for negligence.) Present — Del Vecchio, J. P., Marsh, Cardamone, Simons and Henry, JJ.