■ LEOPOLDO CRUZ, as Administrator of the Estate of ANGEL CRUZ, Also Known as LUIS A. CRUZ, Deceased, Appellant, v STATE OF NEW YORK, Respondent.—Judgment unanimously affirmed, without costs. Memorandum: This is an appeal from a dismissal of a tort claim after a trial in the Court of Claims. The case arose as the result of the drowning of claimant's decedent—a 17-year-old probationary youthful offender—who was, at the time of his death, an inmate of a State facility at Auburn, New York. We affirm the judgment of dismissal. Angel Cruz was accepted at the Monsignor Dugan Start Center, a New York State correctional facility for delinquent adolescent males on June 26, 1970. He was placed at the Start Center at that time as a result of violating a three-year probationary term that he was then serving. Inmates are placed at the center on a voluntary basis, as an alternative to incarceration. It is not a closed facility and there are no cells, walls or other restraints to prevent youths placed there from leaving the premises. On July 25, 1970 approximately one month after his placement, Angel Cruz, accompanied by three other youthful inmates, traveled approximately one quarter of a mile to a pond located on adjacent property. Under the rules, which they had been advised of, permission to leave the Start Center was required. The premises they went upon that day were off limits and these young men knew from past experience that had permission to go there been requested it would not have been granted. Upon arriving at the pond the youths boarded a raft and commenced fishing. Later, they poled the raft out to the middle of the pond and three of the youths jumped off to swim ashore. According to a witness who tried unsuccessfully to save him, Cruz, who was left on the raft alone, exclaimed that he could not swim. Responding, however, to the comments of the other youths already in the water, he left the raft and shortly thereafter drowned. The thrust of claimant's argument before the trial court and on this appeal is that the State inadequately supervised the inmates at the Start Center. In support of this contention he asserts that there was only one supervisor on duty the day of the drowning, that there was a general awareness that the rule

against the boys going to the pond was unenforceable and that the youths were known to slip away and go fishing or swimming at this particular pond. He argues that these facts impose a duty on the State to take preventive measures, e.g., a barricade or fence to prevent easy access to the pond or, in the alternative, to have more personnel at the center for the purpose of keeping the inmates under surveillance. These arguments are without merit. The program at the Start Center envisioned teaching self-responsibility to its 16- to 18-year-old inmates. To have taken any of the suggested courses, i.e., intensive surveillance or fencing-in, would have been directly contrary to the purpose and goals of the center. The decision to place claimant-appellant's decedent in this kind of open environment facility was a type of administrative discretionary act for which the State may not be cast in liability (Weiss v Fote, 7 NY2d 579; Young v State of New York, 40 AD2d 730, 732, mot for lv to app den 31 NY2d 646). Under the circumstances, we conclude that the record does not substantiate a finding of inadequate supervision sufficient to hold the State negligent (Cherry v State of New York, 42 AD2d 671, affd 34 NY2d 872; Oakley v State of New York, 38 AD2d 998, affd 32 NY2d 773). Further, to require more intensive surveillance than that provided would place an undue economic burden on the State with little or no assurance that it would have prevented this unfortunate accidental drowning (Mulberg v State of New York, 35 AD2d 856, affd 29 NY2d 916). None of the inmates at the center was retarded or mentally ill. The decedent himself had not been a source of any problem during his one-month residence there so as to indicate to those in charge the need for closer supervision. The record reveals that the 17½-year-old decedent was of average intelligence. His action in leaving the raft while aware of his inability to swim did not demonstrate the exercise of reasonable care for his own safety. We conclude, therefore, that decedent's conduct, where the danger was implicit in the situation, amounts to contributory negligence (Olsen v State of New York, 30 AD2d 759, affd 25 NY2d 665; see Mintz v State of New York, 47 AD2d 570, 571). (Appeal from judgment of Court of Claims—wrongful death action.) Present—Moule, J. P., Cardamone, Simons, Hancock, Jr., and Schnepp, JJ.